THE STATE v. REYNOLDS, *Appellant.*

Division Two, February 12, 1895.

**Criminal Law**: ASSAULT TO KILL: COMMON ASSAULT: INSTRUCTION. Defendant was indicted for assault with intent to kill one W. and the evidence offered on behalf of the state tended to prove that defendant made the assault on W. with stones and finally struck at him with a knife, cutting his clothing. The evidence was contradictory on the questions whether defendant used a knife and as to which person was the aggressor, and it nowhere indicated that the stones were of a dangerous and deadly nature. *Held,* that it was error to refuse to instruct on assault with intent to kill without malice aforethought and on common assault.

The State v. Reynolds.

Appeal from Oregon Circuit Court.—Hon. W. N. Evans, Judge.

REVERSED AND REMANDED.

James Orchard for appellant.

(1) The court should have given an instruction to the jury that they might find defendant guilty and assess his punishment at a fine or imprisonment in the county jail, or both such fine and imprisonment. See Revised Statutes, 1889, section 3950. It is the duty of the circuit court to instruct the jury on all the law arising in the case. Hardy v. State, 7 Mo. 608. (2) It is the duty of the court in the trial of a criminal case to give proper instructions defining each crime of which, under the indictment, the defendant can be convicted; and of which there is evidence in the case, whether asked for or not. State v. Branstetter, 65 Mo. 149; State v. Palmer, 88 Mo. 568; State v. Brooks, 92 Mo. 543. (3) The defendant's testimony must be taken into consideration in determining what instructions should be given. If the defendant testifies to facts which reduce the offense, instructions must be given by the court appropriate to the offense, whether asked or not. State v. Tate, 12 Mo. 327; State v. Banks, 73 Mo. 592. (4) The defendant testified he had no ill-will until prosecuting witness struck him and commenced throwing the rocks, and his testimony warranted the instruction. If his testimony is such as to reduce the offense, the court must give instructions to meet his testimony. State v. Tate, 12 Mo. 327; State v. Banks, 73 Mo. 592. (5) It is error for the court to instruct the jury that they may return a general verdict of guilty without assessing the punishment, and that the

court would assess the punishment.    *State v. Fox*, 7
Mo. 502.

*R. F. Walker*, Attorney General, and *Morton
Jourdan*, Assistant Attorney General, for the state.

(1) The first assignment of error in defendant's
motion for new trial is that he had not announced
ready for trial.   He is contradicted, however, by the
record, which recites that "both parties announced
ready for trial."   Inasmuch as allegations in motions
for new trial do not prove themselves, but that entries
of record are conclusive, defendant's assignment of
error must be determined against him. *State v. Welsor*,
117 Mo. 582; *State v. Foster*, 115 Mo. 451.   (2) The
same is true of his second assignment of error, that he
was not arraigned and did not plead prior to the jury
being sworn.   The record shows conclusively that he
was arraigned and did so plead.   (3) There was ample
evidence upon which the court was authorized to submit
to the jury the question of defendant's guilt or inno-
cence, and the jury was certainly warranted in finding
that the guilt of defendant had been shown beyond a
reasonable doubt.   The testimony shows beyond perad-
venture a most brutal and unprovoked assault, felonious
in every element.   (4) This court will only interfere
where there is a total failure of proof, and where it is
evident the jury were actuated and governed by preju-
dice or passion.   The record will not indulge such an
intimation in this case.   *State v. Cantlin*, 118 Mo. 100;
*State v. Banks*, 118 Mo. 117.   The verdict is entirely
in harmony with the law as declared by the court.   (5)
The law of self-defense was fully and correctly declared
in instructions numbered 9 and 11, given by the court.
(6) Defendant alleges "newly discovered evidence" in
his motion for new trial.   His motion is not verified

by affidavit. He has alleged and shown no diligence. From the affidavits he has filed, it is evident that the testimony is merely cumulative—nothing more. *State v. Welsor*, 117 Mo. 582.

GANTT, P. J.—Defendant was indicted for assault with intent to kill one F. E. White, at the August term, 1890, of the Oregon circuit court. He was convicted at the August term, 1894.

The evidence introduced by the state tends to prove that appellant Reynolds made an assault on F. E. White with rocks, and finally struck at him with a knife, cutting his coat, vest and suspenders.

The testimony on the part of the defendant tends to prove the following facts: That Reynolds (the defendant) was working for the railroad company, and had obtained a ten days' lay-off; that on the day of the difficulty defendant met White, and White said, "Charley, you are fired;" defendant told him "all right," and both walked to the office, and White made out check for Reynolds' time, and then asked Reynolds for the switch-key and coupler, who said they were at Mrs. Forsyth's, and said he would bring them down; he did go and get the switch-key and coupling knife, and started back with it, and met White on Mrs. Forsyth's porch, and then they both started toward the office together, and while they were going along, Reynolds said to White, he would like to know what he was discharged for, and also said he would like to have a clearance on leaving there, to show what he was fired for. White answered, "we don't want such people working for us." Reynolds said, "For us? ain't you working for wages same as I am?" White said, "I have control of firing or hiring you." Reynolds said, "You didn't hire me; Mr. Hammond hired me, and I would like to know the reason I am fired."

White said, "We don't want such people to work for us, at all." Reynolds said, "My people are just as good as your people, and I am as good as you are." White said, "*What did you say?*"

Reynolds had already handed White the coupling knife, and White then and there turned and struck Reynolds on the arm with the coupling knife. Then the rock throwing commenced; both grabbed rocks and raised up about the same time, and there were fifteen or twenty rocks thrown. White hit Reynolds with a rock and Rollins stopped them. Reynolds says he did not cut White with a knife. White says he did. Hammond swore that he saw the difficulty from the office window. Mrs. Forsyth, Mrs. Bone and others testified that there was a very high fence between the office window and where the fight was; that it was between six and seven feet high. Reynolds swears that White stooped down first, got a rock and threw the first throw. Mrs. Bone and Mrs. Forsyth both saw the latter part of the difficulty, and neither saw a knife. Jones, the sheriff, testified that when the writ came into his hands he went and saw White, and White said let it go, it don't amount to anything, and not to serve the writ, or similar words. White claims that after he received the coupling knife he turned and left defendant and saw him just in the act of picking up a rock which he did and threw at White. They then mutually engaged in the duel with rocks when defendant advanced and drew his knife and cut White's clothing.

The court declined to instruct for common assault and defendant excepted at the time. The court failed to instruct on any degree less than assault to kill with malice aforethought. Defendant, after verdict, prayed for a new trial, assigning as a ground the refusal and failure of the court to instruct on common assault.

The court instructed on self-defense, and on all other points, except common assault, and assault with intent to kill without malice aforethought.

We think the court erred in not submitting the issue of common assault to the jury. The evidence nowhere indicates that the rocks thrown were of a deadly and dangerous nature and there was a sharp conflict as to who was the aggressor. The jury were disposed to give the defendant the lowest punishment and so returned in their verdict which the court declined to receive. The verdict was: "We, the jury, find the defendant guilty and we, the jury, assess the penalty to the lowest limit of the law."

The lowest punishment under the section under which defendant was indicted is two years, but we think most clearly the court should have also submitted to the jury the question whether the assault was, or was not, with malice aforethought. If the jury found it was without malice aforethought the punishment would have been a fine or jail sentence or both. *State v. Buchler*, 103 Mo. 203; *State v. Webster*, 77 Mo. 566.

For the failure to instruct on assault with intent to kill without malice or aforethought and on common assault, the judgment is reversed and the cause remanded for a new trial. All of this division concur.