State v. Taylor.

THE STATE v. TAYLOR, *Appellant.*

Division Two, November 20, 1896.

1. **Criminal Law**: BURGLARY AND LARCENY: INDICTMENT: FELONIOUS INTENT. An indictment which charges that defendant "did feloniously and burglariously break into and enter the store * * * with intent the goods, chattles, etc. * * * then and there being, feloniously and burglariously to steal, take and carry away * * * and did then and there feloniously steal, take and carry away," etc., sufficiently charges the felonious intent.

2. ——: ——: ——: ——.. If the felonious intent be not alleged in an indictment for burglary, or if it be defectively alleged, such defect will be cured by the subsequent allegation of the commission of a substantive felony after the breaking and entering.

3. ——: PRACTICE: EVIDENCE: CONTRADICTION OF WITNESS. A witness who denies having had a certain conversation may be impeached by the testimony of the person with whom the conversation was had, the proper foundation having been laid.

4. ——: BURGLARY: INDICTMENT. Where an indictment alleges the commission of a burglary with an intent to perpetrate a particular felony, evidence of the commission of another and independent felony will not be received; and an instruction that if the burglary was done with the intent to commit any felony, the jury should find him guilty, is erroneous.

5. ——: LARCENY: ASPORTATION. The removal of goods in a store from their accustomed places with intent to steal them is a sufficient asportation to constitute the taking a theft.

6. ——: BURGLARY: EVIDENCE. On a trial for burglary, evidence that another than defendant had made a key that would unlock the burglarized building and that he intended to burglarize it is inadmissible, there being no offer to show that he had done any overt act toward the perpetration of the burglary.

*Appeal from Johnson Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED AND REMANDED.

*A. B. Logan* for appellant.

(1) The indictment is defective, and does not sufficiently charge any public offense against defendant. It charges "with intent the goods, chattels, personal property and valuable things" in the said store, etc. There is no charge that the intent was felonious. The indictment must charge that both the act and intent were felonious. *State v. Feaster*, 25 Mo. 324; *State v. Herrell*, 97 Mo. 105; *State v. Green*, 111 Mo. 585. (2) The court erred in permitting Ed. F. Imes, witness for the state, to testify to a conversation with Lee Taylor and not in the presence of defendant. (3) The court erred in refusing to allow defendant to prove that he never had in his possession a key such as would unlock the front door to the wareroom, by which the entrance was made to this store by someone as we believe, and since then has been sworn to by James Baker himself that he (James Baker) was the one who unlocked and opened that identical door. (4) Instruction number 2 on the part of the state was radically wrong. It entirely ignores the intent of defendant. They may have believed every fact that defendant testified to, and yet found him guilty. This instruction ignores entirely the question of felonious intent.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The indictment is drawn under section 3526, Revised Statutes, 1889, and charges the burglarizing of a store with intent to steal. The language of the statute relative to the particular offense is followed, and the indictment is in the form frequently approved by this court. *State v. McGraw*, 87 Mo. 161; *State v. Shields*, 89 Mo. 259; *State v. Tyrrell*, 98 Mo. 354. (2)

The examination of Ed. F. Imes, a witness for the state, by prosecuting attorney, as to what third parties had told him (the witness) about defendant's actions in relation to the property alleged to have been stolen was error, but defendant made no objections and saved no exceptions to the admission of same, and will not, therefore, be heard to complain. No other errors were committed by the trial court in the admission or exclusion of evidence. (3) Instruction number 1 contains a general direction to the jury, and could in no way have prejudiced defendant. If there is error in instruction number 2 in omitting a statement that the act must, to authorize a conviction, have been committed with "felonious intent," this error is cured by other instructions given by the state, and hence defendant was not prejudiced. Number 4 correctly declares the law as to what constitutes a felonious breaking or a burglary. Number 5, defining "feloniously" and "willfully," is not subject to substantial objection. Instructions numbers 1, 2, 5, and 8, asked by defendant and not given, were properly refused because the law had been fully and clearly declared by the court in the instructions given. Where instructions given fully and properly declare the law applicable to the case under the evidence the refusal of others will not constitute error. The evidence was ample, as shown by defendant's own statement, to support the verdict. Unless there is an evident failure of proof this court will not interfere on account of a lack of evidence.

SHERWOOD, J.—The indictment in this cause, on which defendant was found guilty of burglary, acquitted of larceny, and his imprisonment assessed at three years' imprisonment in the penitentiary, is founded on section 3526, Revised Statutes, 1889, and is, in its charging portion, the following: "That Rus-

sell Taylor, late of the county of Johnson and state of Missouri, on the fifteenth day of August, 1895, at the said county of Johnson, state of Missouri, did feloniously and burglariously break into and enter the store of W. T. Baker there situate, the same being a building in which divers goods, merchandise, and valuable things were then and there kept for sale and deposited, with intent the goods, chattels, personal property, and valuable things in the said store, then and there being, feloniously and burglariously to steal, take, and carry away, and six pocketknives of the value of three dollars, one pair of shoes of the value of three dollars, and one plug of tobacco of the value of thirty-five cents, of the personal goods of the said W. T. Baker, then and there in the said store being found, did then and there feloniously and burglariously steal, take, and carry away, against the peace and dignity of the state."

This indictment is objected to because it contains no charge of any "*felonious intent*."

This claim is not tenable. The indictment is, in form and substance, substantially identical with forms found in Chitty and Archbold. 3 Chit. Crim. Law, *1117; 2 Arch. Crim. Prac. & Plead. (Pomeroy's Notes) 1071, 1075. Such form as above has been in substance and effect expressly approved by this court in several cases. *State v. McGraw*, 87 Mo. 161; *State v. Shields*, 89 Mo. 259; *State v. Tyrrell,* 98 Mo. 354.

Besides, even if the felonious intent be not alleged, or insufficiently alleged, such defect will be cured by the subsequent allegation of the commission of a substantive felony after breaking and entering, which is the best evidence of, and decisive of, a felonious intent. *Com. v. Brown*, 3 Rawle, 207; *Jones v. State*, 11 N. H. 269; *Com. v. Hope*, 22 Pick. 1; 1 Hale, P. C. 560; 2 East, P. C., chap. 15, sec. 25, p. 514; *Rex v. Furnival*, Russ. & Ry. 445; *State v. Henley*, 30 Mo. 509.

Mrs. W. T. Baker, the wife of the owner of the store, and the principal witness for the state, testified that on the evening before when she left the store she locked all the outside doors of the store and wareroom. The morning of the fifteenth of August, 1895, she was sleeping upstairs in the southwest room of her house; was awakened by the noise of a passing wagon; it was too dark to tell what kind of a wagon it was, but thought from the noise it was a spring wagon. After the wagon passed, she sat down by the window and in a few minutes saw a man going south on the road past her house, though he was on the east side of the road. She got up, hunted for her dress; had difficulty in finding it; finally went down stairs and got a cape and put it around her shoulders and went down through the dining room and out along the south porch toward the store. When she got a little north of the store she thought she heard a noise inside of the store; sounded to her like the closing of a showcase which stood on the north side of the storeroom near the west (front) end, in which was kept only ribbons and millinery goods. Then she went back to the house and awakened Willie Garvey and Lucy and Cora Hackler. Mrs. Baker then went to the front of the store so she could see the west end and south side; sent Garvey around east end so he could see east end and south side. In a few minutes defendant came out of the door on the south side and near the east end of the storeroom, one of which was open.

When defendant stepped out, Mrs. Baker said: "Russell, we have had enough of this; this has been going on long enough," or "we have been deviled long enough." Defendant replied: "Mrs. Baker, I hope you don't think I am here to do anything wrong." Mrs. Baker said: "It looks like it, Russell; this thing has been going on a good while; this is the second

time our store has been broken into." Mrs. Baker testified that she then told defendant that if he wanted to satisfy her that he had nothing, he could turn out his pockets, but this he declined to do, saying that he didn't think it was fair; that somebody ought to search him who had authority to do so. Mrs. Baker then remarked to defendant that she thought that somebody else was in the store, but defendant said he didn't think there was anybody in there. Upon a search made in the store and warehouse, no one was found there, but Mrs. Baker found that some pocketknives had been taken, a part of a plug of tobacco; and some tobacco and a pair of shoes were found out of their usual places where they had been left the night before; the shoes on the floor, etc.

Defendant's version of the matter was this: The morning of the fifteenth of August, he got up about 5 o'clock; it was a cloudy, dark morning; kindled a fire and started to George Hackler's well to get a bucket of water; when he reached the front gate of Hackler's yard, he set the bucket down under a cedar tree (where it was afterward seen by Mrs. Geo. Hackler and defendant's wife); he then started down to Baker's stable to feed Baker's team; he saw the door in the west end (front) of the wareroom was open; supposing some of the Bakers were in the store, he went to the wareroom door, stepped in and seeing no one there walked out and closed the door; went southwest to Baker's stable to feed the team; finding the corncrib which contained the feed locked, he went out of the stable and then observed that one of the double doors on south side of the store was open; he crossed direct to that door, stepped inside, stood there for a moment; not seeing anything he walked out of the same open door, and then met Will Garvey and asked him where Mrs. Baker was. He said, on the west side of

the store.   Just then she walked up and asked defend-
ant if anyone had been in the store.   Defendant said
he had.   She then asked if anyone else was there.   He
said, yes, somebody else had been there.   When she
asked him to show her what he had in his pockets, he
said:   "I don't think that is fair; I wasn't in the store
for any bad purpose, and will stay right here with these
men until an officer comes; will stay here all day with
them if necessary, and not take anything out of my
pockets."

Defendant denied having entered the store for any
purpose except as above stated.   He explained his
reluctance to being searched, after stepping out of the
store, because he had a *"female syringe"* in his pocket
which he *always* carried there (and in this he was cor-
roborated by his wife) and didn't want to be exposed at
that time by being searched before women.   It was in
evidence also that defendant as he admitted on cross-
examination had burglarized the *same* store some fif-
teen years before, being assisted therein by one John
Lockhart, and had pleaded guilty to that charge.

Various errors are assigned as having occurred at
the trial, among them that error was committed in the
examination of Ed. F. Imes, a witness for the state
brought in rebuttal.   He was questioned in regard to a
conversation he had with Lee Taylor at the latter's
home and which Taylor had denied.

It seems that the proper foundation had been laid
by asking Lee Taylor the proper questions.   This
being the case, it was entirely competent to examine
Imes as a witness in rebuttal in order to impeach Lee
Taylor, but not to be used as original evidence.   For
the purpose of the impeachment this rebutting evi-
dence was introduced, and it was restricted to that
purpose by an instruction given at defendant's instance,
and in this there was no error.

Error was committed in the second instruction given at the instance of the state, in that it told the jury that if "said breaking and entering was done with the intent to steal or commit *any felony* therein, then you will find defendant guilty of burglary in the second degree." It will be obvious to any legal mind that this instruction is contrary to elementary law.

Nothing is better settled than that having alleged a burglary to have been done with an intent to perpetrate a certain felony, evidence of another independent felony can not be received. East says: "But whatever be the felony really intended, the same must be laid in the indictment and proved agreeably to the fact. * * * And so if it be alleged that the entry was with intent to commit one sort of felony, and the fact appear to be that it was with intent to commit another; that is not sufficient." 2 East, P. C. 514; 3 Glf. Evid. [14 Ed.], sec. 82. So far as concerns the goods having been taken, if they were removed by the thief from their accustomed places with intent to take them, this was a sufficient asportation to constitute the taking a theft.

The offer of defendant to prove that Jim Baker, the blacksmith, had made a key which would fit and unlock the store in question, and that he intended to burglarize it, was properly rejected. Mere threats by third persons to commit the crime charged against the accused, or the confessions of such persons in open court that they had committed such crime, is wholly inadmissible in defense of the party on trial, because such matters are purely hearsay. *State v. Duncan*, 6 Ire. 236; *State v. May*, 4 Dev. 332, *et seq.*; *State v. Patrick*, 3 Jones (N. C.) Law, 443.

If there had accompanied the offer made, the further offer to prove that Jim Baker after making the threats or the key for the purpose mentioned, had done

some overt act toward the perpetration of the burglary, or even had-been seen in the immediate vicinity of the crime, at or about the time of its perpetration, a different ruling would perhaps be required. *State v. May,* *supra, loc. cit.* 333.

For the error aforesaid, the judgment should be reversed and the cause remanded. All concur.