THE STATE v. WILLIAM HORN, alias STICK HORN, Appellant.

Division Two, February 18, 1908.

1. **CONTINUANCE: Affidavit: Absent Witnesses.** An affidavit for a continuance based on the absence of witnesses who would swear to things indicating defendant's insanity, which does not disclose the names of such witnesses nor the place of their residence, is clearly insufficient.

2. ———: **No Subpoena.** Where no subpoena had been asked for a witness who resided in an adjoining county, and no time was asked to secure his attendance at the trial, it is not error to refuse a continuance because of the absence of such witness.

3. ———: ———: **Cumulative.** Where the affidavit states that four witnesses, naming them, are in attendance at the trial, and will testify substantially to the same things as would a certain other person, on account of whose absence a continuance is

asked, the testimony of such absent person would be only cumulative, and the application should be denied.

4. ————: **Insanity: Defense Not Made.** Where the defense of insanity was not made at the trial, and the witnesses which the affidavit stated would testify to defendant's insanity did not testify at all, an application which asked for a continuance on account of the absence of witnesses who would testify as to his insanity, stated no ground for a continuance.

5. ————: **Court's Discretion.** The granting or refusing of a continuance is a matter so largely resting in the judicial discretion of the trial court that the Supreme Court will not interfere unless it be made to appear that such discretion has been unwisely exercised.

6. **BURGLARY: Intent: Res Gestae.** In determining defendant's intent in breaking into a dwelling house the jury are not confined to what defendant did or said prior to the time he actually entered the house, but can consider all he said and did thereafter, which was a part of the *res gestae.*

7. ————: ————: **Shooting Through Door: Threats.** Defendant and his wife had been divorced. She was at a neighbor's house with her four-year-old child. He came there about nine o'clock of a July evening, and inquired for her and the child, but the neighbor's daughter, thinking him intoxicated, told him they were at his former wife's brother's, to whose house he went and was told where they were. He returned about ten o'clock, when the ladies were in the act of retiring, and demanded admittance. The same young lady partly opened the door, the screen door remaining fastened, and defendant stated he wanted his wife and child and was going into the house. She told him they were not in the house, and that he could not come in. He cursed her and swore he would kill her, and she closed the door, and he immediately fired three shots from his revolver, the bullets going through the door. He then went to the back door, broke it open, and the young lady's father pointed an unloaded gun at him and told him not to enter, but he pushed it aside, sprang in, swinging his revolver, and demanding his wife and baby, and threatened the young lady with, "Death or the baby." *Held*, that there was ample evidence to justify the jury's finding that the breaking was done with a felonious intent.

8. ————: ————: ————: ————: **Demurrer.** And the court did not err in overruling a demurrer to the evidence based on the ground that fifteen minutes had elapsed after the defendant broke into the house before he did anything that squinted at an assault or the consummation of a felonious intent, for that, like all other facts in the case, was for the consideration of the jury.

Appeal from Greene Criminal Court.—*Hon. A. W. Lincoln*, Judge.

AFFIRMED.

*Jas. B. Delaney* for appellant.

(1)  The trial court erred in overruling defendant's application for a continuance.  The application contained all the necessary averments:  (1) materiality of evidence; (2) diligence; (3) probability of procuring testimony within reasonable time; (4) what testimony would consist of; (5) that affiant believed the same to be true; (6) that such testimony was not wanting through connivance or consent of defendant; (7) that such application was not made for vexation or delay; (8) such application was properly verified.  Where the statutory requirements are complied with and it appears that the overruling of a motion for continuance affected in any way the result of the case, such ruling is reversible error.  State v. Woodward, 182 Mo. 491; sec. 2600, R. S. 1899.  (2)  The element of intent to commit a felony was wholly lacking at the time of the breaking and entering of the Smith home, and an intent formed after such breaking will not constitute the offense of burglary in the first degree.  Sec. 1880, R. S. 1899; 2 Arch. P., 329.  The evidence on behalf of the State utterly fails to show any felonious intent at the time of the breaking.  (3)  Defendant's demurrer to the State's case should have been sustained.  There is a hiatus in time as shown by the testimony of Stella Smith and the rest of the State's witnesses of over fifteen minutes from the moment of defendant's breaking into the house before a single act is shown which even squints at an assault or the consummation of the felonious intent.  The language used by defendant in connection with the act of pointing the pistol too plainly falls within the old rule of "harmless alternative" to be a

threat, and on the other hand absolutely negatives any intent to kill. 2 Greenl. on Ev. (13 Ed.), pp. 69, 70; State v. Sears, 86 Mo. 175; State v. Llewellyn, 93 Mo. App. 469. (4) The proof of statements of a third party, made after defendant had been in the Smith home for at least an hour, and after Stella Smith had left the house (she being the one against whom the defendant was charged to have the felonious intent) is no part of the *res gestae* and amounts to hearsay testimony. State v. McGuire, 113 Mo. 670; State v. Grote, 109 Mo. 355; State v. Foley, 130 Mo. 484; State v. Rider, 95 Mo. 548; State v. Beard, 126 Mo. 548.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris* for the State.

(1) It does not appear of record that the trial court committed any error in denying the application of defendant's attorney asking for an inquiry as to defendant's sanity on the day the cause was set for trial. It does not appear that any evidence in support of the application was laid before the court, and it is not shown that the court had reason to believe that defendant had become insane after the time of his indictment. R. S. 1899, sec. 2603; State v. Crane, 202 Mo. 79. (2) There was no error in the action of the trial court in refusing defendant's application for a continuance. (a) The granting or refusal of an application for continuance is a matter addressed to the wise discretion of the trial court, and while it is reviewable, it must appear to have been unwisely and oppressively refused before this court will interfere with the judgment of the circuit or trial court. State v. Crane, 202 Mo. 74; State v. Williams, 170 Mo. 204. (b) In order to warrant a reversal on the ground of the refusal of a continuance, it must appear from the whole case that the result might have been different had the testimony been given as indicated. State v. Woodward, 182 Mo. 391;

State v. Crane, 202 Mo. 77.  (c)  The application for continuance is not sufficient, inasmuch as the affidavit does not show that admissible testimony is expected from the witnesses having a material bearing on some point in issue, and the affidavit does not show due diligence to have been used by the defendant.  While the affidavit refers to supposed witnesses who might testify to the condition of defendant's mind, it does not show that the defense relied upon was insanity, nor disclose the nature of the defense.  The affidavit names four such witnesses who were then in attendance upon the court, and for purposes of mere cumulative evidence, asks delay in order to bring in one Emerson from Polk county; unnamed and unknown witnesses to the alleged fact that some of the descendants of defendant's grandmother were, or had been afflicted with nervous trouble or insanity, are alleged in the affidavit, to be in Shelby county in the State of Illinois; but the affidavit does not disclose the information upon which affiant made the statement that there might be such witnesses, nor what assurance affiant had that such testimony could be obtained from them.  State v. Crane, 202 Mo. 74; State v. Rice, 149 Mo. 461.  (d)  The plea of insanity was not made as a defense at the trial.  The trial took place on the same day that the application for continuance was filed and refused, and defendant testified in his own behalf.  It would seem that the allegation of insanity in the motion for inquiry and application for continuance was a mere pretext for delay, and hence defendant could not possibly have been prejudiced by the action of the court in that respect.  State v. Rice, 149 Mo. 465; State v. Dettmer, 124 Mo. 426.  (3)  Every essential element of the crime charged in the indictment was conclusively proved by the evidence.  That defendant broke into and entered the dwelling house with intent to commit a felony was clearly proved, and defendant's demurrer to the evidence at the close of the

State's case was properly overruled. State v. Painter, 167 Mo. 84; State v. Dooley, 121 Mo. 591.

BURGESS, J.—On the 1st day of August, 1907, at the July term, 1907, of the criminal court of Greene county, an indictment was returned against the defendant charging him with burglary in the first degree. At the same term, and on the 23rd day of August, 1907, defendant's attorney filed a motion asking for the appointment of a lunacy commission to inquire into the mental condition of the defendant, which motion was overruled by the court. On the same day the defendant, by his attorney, filed application for a continuance, which was overruled. The defendant, being formally arraigned, stood mute and refused to plead, whereupon the court ordered a plea of not guilty entered, and, on the same day, defendant was put upon trial and convicted, his punishment being assessed at sixteen years in the penitentiary. Defendant's motions for a new trial and in arrest having been overruled, he appealed.

The evidence on the part of the State tended to prove that defendant and his wife, Maud Horn, were divorced in May, 1907, on the petition of the wife, who retained custody of their child, aged about four years. After the divorce, the woman and her child went to live with her father, Jacob Head, who resided near Ash Grove, Greene county, Missouri. On Sunday, July 14, 1907, Maud Horn and her child were at the home of John Smith, about three-quarters of a mile south of Jacob Head's home. About nine o'clock in the evening of that day the defendant, in company with one Morrissett, arrived in a buggy at the Smith home and inquired for Maud, his former wife, and the child. Stella Smith, daughter of John Smith, thought the defendant was intoxicated, and she told him that Maud and the baby were at the home of Vet Head, Maud's brother, across the creek. Defendant and his companion drove away,

and having been informed by Mr. Head that the woman and child were at Smith's the defendant returned to the Smith home. It was then about ten o'clock, p. m. Mr. Smith was in bed in a front room of the house, and his daughters, Stella and Mary, and Maud Horn and child, the latter being sick, were in the act of retiring in another room. The defendant knocked on the front door, and Stella asked him what he wanted. He answered that he wanted his wife and baby, and asked Stella to come to the door. She replied that she was in her night clothes and could not come, and he said that she had better come, and began rattling the screen door. Stella went back to Maud and asked her what she should do, and Maud told her not to let him in as he was drinking. Maud then concealed herself and her baby in a closet. Stella went to the door, unlocked and partly opened it, the screen door remaining fastened, and the defendant asked her to come out into the yard, which she refused to do. Defendant then said that he was going into the house and that he wanted his wife and baby. She told him they were not in the house, and that he could not come in. He then said, "Damn you, Stella Smith, I will kill you." She closed the door in his face, and immediately the defendant fired three shots from his revolver, two of the bullets going through the center of the door, and the third a little higher up. The defendant then went around the house to the back door, which he burst open, breaking the lock, whch consisted of a thumb latch and hook fastened on by screws. As he was about to enter, Mr. Smith pointed his gun at him and threatened to shoot him if he came in. Defendant said, "Kill me, I want to die." Smith's gun was not loaded, and the defendant shoved it aside, told Smith to stand back, and sprang into the room, swinging his revolver and demanding his wife and baby. Stella ran into the dining room to get to the telephone, but defendant followed her and made her hang up the re-

ceiver. She began talking to him, and tried, without avail, to induce him to leave. As she was about to go back to the room where her father was, the defendant grabbed her by the arm and, pointing his revolver in her face, said, "Death or the baby." She released herself and went back to her father's room and sat down by him, but the defendant followed, and, again raising his revolver, said they would all die together or he would have his wife and baby. Smith told him to give up his revolver, and he would let him see his wife, but the defendant refused. Maud Horn escaped out of the house and hid herself and child in some weeds near by, and Mr. Smith and his daughters ran out and went to a neighbor's house. The defendant's companion, Morrissett, had entered the house before all had left, and Maud heard them talking and calling for her. The next day defendant's revolver, two chambers of which were loaded and three empty, was found behind a log in the yard of the Smith home.

It also appeared in evidence that within a week prior to said July 14, 1907, the defendant called two or three times at Smith's house and saw his child, and brought it ice cream, candy, shoes and stockings. On those occasions Maud, his former wife, was present, and there was no trouble or unpleasantness, and the Smith family, Maud and the defendant were all on good terms.

The defendant testified in his own behalf that he was twenty-six years of age, that he and his wife first had trouble in February of the same year, and that it was brought about by his wife's parents. His wife, he said, applied for a divorce on April 10, 1907, and it was granted her while he was in jail at Bolivar, Missouri, on a charge of attempting to kill his child, which charge had been brought by his wife's brothers. That the day he got out of jail he went to Jacob Head's to see his child, and Mr. Head would not let him see

it. A few days later, his brother-in-law, John Head, told him there would be no objection to his seeing his child, and, accompanied by his sister, defendant called at Jacob Head's and saw the child, which was brought out to the road where he was. On that occasion he and his former wife talked in a friendly manner, and she invited him to come out to Smith's to see her, which invitation resulted in the visits by defendant referred to in the State's evidence. Defendant further testified that when Stella Smith told him at the front door of the Smith home that his child was not there and refused to let him in, he, while standing on the ground, shot with his revolver through the door to scare Stella in order that she might let him in to see his child; that after the first shot he heard her run from the door, and that he shot twice more to frighten her, and not with any intention to kill. That he then went to the back door, which was unlocked, and there he was met by Mr. Smith who had a shotgun in his hands. Defendant denied that he had any intention to kill anybody, or that he made the threats testified to by Stella Smith. On cross-examination, he said that he had been in jail at Bolivar in April, on the charge of assulting his baby with intent to kill, and that he remained in jail until June 26, 1907. He denied that he pointed a pistol at Stella Smith at any time while in the house. He admitted that he had had a few drinks that evening, but denied that he was intoxicated. He further admitted that he had at other times pleaded guilty to offenses as follows: February 6, 1902, assault; January 23, 1904, fighting and disturbing the peace; July 24, 1905, gambling; September 22, 1905, fighting.

It is said for defendant that the court erred in overruling his application for a continuance, which he insists was in due form and in compliance with section 2600, Revised Statutes 1899. The motion for a continuance was filed on behalf of the defendant, and sworn to

by his brother, on the 23rd day of August, 1907, being the same day the cause was set for hearing. One of the assigned grounds for continuance was the absence of a number of witnesses, to be sought among the inhabitants of Winsor, Shelby county, Illinois, whose names were not then known to the affiant, but by whom defendant expected to prove that he had for some time been afflicted with a nervous trouble verging on St. Vitus's dance, that other members of his family were similarly afflicted, and that the grandmother as well as a cousin of the defendant, residing in Illinois, were periodically insane, the belief of the affiant being, as disclosed by the affidavit, that the testimony of such witnesses, if procured, would form the basis for an opinion of an expert as to the defendant's sanity or insanity. The affidavit in this regard is clearly insufficient as it does not give the names of the persons, nor show where they reside, as required by section 2600, supra.

Another alleged ground for continuance was that one Emerson, residing in Polk county, Missouri, was a material witness for the defendant, and that his testimony, if obtained, would be that the defendant, even before the commission of the alleged offense, was possessed of the idea that some members of the family of his wife were intent on taking his child, Florence Horn, away from him, and that defendant further seemed to be possessed of the idea to kill the child rather than let it be so taken from him by a conspiracy between his wife and her relations, as defendant believed they had so conspired to do; that said idea of defendant was a delusion, but that defendant verily believed the same to be true. As to this witness, no subpoena was asked for him, nor for time to secure his attendance at the trial, although, as shown by the affidavit, he was a resident of an adjoining county. We think the showing as to this witness was also insufficient.

The affidavit further states that four witnesses, A.

L. Martin, Elvil Goforth, John Barker and George Bryant, were in attendance at the trial, and would testify to substantially the same matters that the said Emerson would, if present. So that the testimony of said Emerson would have been only cumulative, and the application was, on that ground, also properly denied. Besides, the defense of insanity was not made upon the trial, nor did any of the witnesses alleged in the affidavit to have been present testify. It, therefore, seems to us that no ground for a continuance was shown by the affidavit. Moreover, the granting or refusing a continuance is a matter so largely resting in the discretion of the trial court that the Supreme Court will not interfere unless it be made to appear that such discretion has been unwisely exercised, which does not seem to us to have been done in this case. [State v. Day, 100 Mo. 242; State v. Banks, 118 Mo. 117; State v. Rice, 149 Mo. 461; State v. Crane, 202 Mo. 54.]

Defendant contends that the element of intent to commit a felony was absent at the time of the breaking and entering of the Smith home, and that an intent formed after such breaking will not constitute the offense of burglary in the first degree.

Section 1880, Revised Statutes 1899, defining burglary in the first degree, declares that "every person who shall be convicted of breaking into and entering the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony or larceny therein, first, by forcibly bursting or breaking the wall or outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter; or, second, by breaking in any other manner, being armed with some dangerous weapon, . . . shall be adjudged guilty of burglary in the first degree."

In determining the question of intent upon the part of the defendant in breaking into the Smith home, the

jury were not confined to what the defendant said and did before the time he actually entered the house, but could consider all that he said and did thereafter, which was part of the *res gestae,* and when the fact that he went there armed with a loaded pistol and fired three times through the door be considered in connection with the other facts and circumstances relating to the breaking in, there was ample evidence to justify the jury's finding that the breaking was with a felonious intent.

Defendant next insists that the demurrer interposed by him to the evidence at the close of the State's case should have been sustained. The ground upon which this contention is based is that from the time the defendant broke into the house a period of fifteen minutes had elapsed before he did anything which even squints at an assault or the consummation of a felonious intent. This, like all other facts in evidence, was for the consideration of the jury, and as there was ample evidence to take the case to the jury, there was no error in overruling the demurrer.

It is said for defendant that proof of statements of a third party (Morrissett) made after the defendant had been in the Smith home for sometime, and after Stella Smith, the girl against whom the defendant was charged to have the felonious intent, had left the house, constituted no part of the *res gestae* and amounted to hearsay testimony. The record shows that the court sustained an objection to the introduction in evidence of a conversation had between witness Maud Horn and Morrissett, who was with defendant, and came into the house after Stella Smith had left, so that defendant seems to be in error in saying that such testimony was admitted.

Finding no reversible error in the record, we affirm the judgment.

All concur.