**STATE of Missouri, Respondent,**

v.

**James Robert SHIVERS, Appellant.**

No. 55077.

Supreme Court of Missouri, Division No. 2.

Oct. 12, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Latney Barnes, Mexico, for appellant.

PRITCHARD, Commissioner.

By the verdict of a jury appellant was convicted of burglary in the first degree, as charged, he "did break and enter into said dwelling house by forcibly breaking and bursting the outer door with the felonious intent to make and commit an aggravated and felonious assault upon a person therein, one Lavenia McKinnon, by feloniously and on purpose intending to make an assault upon said Lavenia McKinnon by striking, beating and wounding said Lavenia McKinnon with a bottle and with hands and feet with the intent then and there to do great bodily harm and injury to the aforesaid Lavenia McKinnon." See § 560.040, RSMo 1959, V.A.M.S. It was alleged that appellant was a second offender, which the court found outside the hearing of the jury. Appellant's sentence was assessed and adjudged by the court to be seven years imprisonment in the Department of Corrections.

On January 29, 1969 Lavenia McKinnon, the victim of the alleged assault, was in the home of Marlene Valatta Herndon at 1204 E. Lafayette in Mexico, Missouri. According to Marlene appellant came to her home about 12:30 or 1:00 a.m., at which time Lavenia, Marlene, her three children and appellant were present. At that time appellant wanted to talk to Lavenia but she did not want to talk to him. The two started fighting upstairs where appellant had followed Lavenia, and he then hit her over the head with a Walker's DeLuxe bottle. She started bleeding, and after that they started fighting downstairs in the front room. Appellant told Lavenia "that he would just as soon kill her if she would mess with him like that." Appellant then left, and Marlene and Lavenia went to the kitchen where they sat down to play cards. The front door was then closed and locked, and in about five minutes after he left appellant pushed in the front door. A photographic exhibit shows the door was "tore down." On this second entry, appellant and Lavenia started fighting in the front room and then in the kitchen where he hit her over the head with a 7–Up bottle. Marlene ran out the back door and called the police. Thereafter, Lavenia was lying on the kitchen floor with appellant standing over her trying to get her to go to the hospital, but she would not go. The police came and appellant ran out the back door. Marlene denied that one Robert Scott was there in appellant's presence that night.

Lavenia's version of the occurrence was that about 12:00 o'clock appellant came into the house and said he wanted to talk to her. She told him she did not want to talk to him and that she wanted him to leave her alone. He then said, "If I can't have you, nobody else is going to have you." Lavenia then took a blanket and went to the upstairs bedroom and locked the door. Appellant shortly pushed upon the bedroom door, came in and said he would just as soon kill her and picked up a bottle and hit her on the head with it. Her arm started bleeding from the cut by the glass of the bottle and she stepped on a piece of it. She went to the bathroom to wash off the blood and Marlene asked appellant to leave, which he did. In a few minutes they heard a knock on the door and appellant "come busting in the door and he said: 'I said if I can't have you, well, nobody else is going to have you.'" Marlene asked appellant to go home, and she and Lavenia sat at the table with appellant walking back and forth. He asked for a drink, and said he would drink his

own if they would give him none of theirs, he having some wine in his pocket. Lavenia got up to go to the couch to sit down and appellant grabbed her in the chest and pushed her against the wall. There was a 7–Up bottle on the table which Lavenia threw. Marlene left to call the police and appellant picked up the 7–Up bottle and hit Lavenia on the head with it, "then he hit me again with the other bottle, then he knocked me down." After they got through fighting he told her he would take her to the hospital. Lavenia described her injuries as being a knot (indicating), a little gash where he hit her with the whiskey bottle. "He kicked me with his feet on my legs and on my stomach and on my back— I had bruises on my arm—I got a cut on my shoulder on this side (indicating)."

On cross-examination it was elicited from Lavenia that appellant, on his second entry, sat in the front room and then walked about five times from there to the kitchen where Lavenia and Marlene were playing cards. He flicked his cigarette ashes into a bottle on the table as he walked by. On the table were two 7–Up bottles and a Pepsi or Coke bottle. Marlene and Lavenia each had a cap full of the Walker's DeLuxe, chasing it with 7–Up, and appellant drank a little wine after which he sat down at the table and wanted to play a hand of cards. Lavenia got up and he grabbed her. She then weighed about 190 pounds and was twenty years of age.

About 2:20 a.m. on the night in question Lt. Delbert Sanders received a radio call and went to 1204 E. Lafayette where they met other officers. They then went looking for appellant and saw him walking up the sidewalk to his home on Holt Street. Appellant ran into his mother's home, and she opened the door for the officers after appellant had slammed it in their faces and had said, "I'm not going with any cops anywhere." Appellant had a wooden fork, and the officers told him he was under arrest for breaking and entering at 1204 Lafayette Street. Appellant's brother tried

to reason with him and take the fork from him, and the officers retreated. Appellant grabbed a butcher knife and brandished it "in a threatening manner," and refused to go with the officers. Appellant went into the bedroom and knelt behind a bed and said, "I have a gun and I will use it." Sanders sprayed him with chemical mace, after which appellant was taken into custody and handcuffed. Sanders described Lavenia's physical appearance: she had a bump on her head, but was not bleeding; she had a "place on her leg," but it did not appear to him that she needed either a physician or hospital assistance. Other officers testified similarly as to the facts of the arrest.

Robert Payne Scott testified for appellant that he was present in the Herndon home in the late part of the night of January 29. Lavenia and Marlene were there and appellant arrived somewhere between 12:00 and 12:30, and was admitted by Marlene. They all sat and talked awhile and Robert wanted to go home and went to get his coat. He could not find it and Marlene told him she threw it outside. He went outside to look for it and Marlene shut the door on him. He pushed against the door and heard it crack as though the frame came loose. Up to that time there had not been any "fracas" between appellant and Lavenia, who then went upstairs. Robert heard them arguing as they came back downstairs, appellant said something and Lavenia grabbed him. He kept asking her to let go and she kept pushing him, and finally they just started fighting. Robert stayed a few minutes and left as the police came. On cross-examination Robert testified that it was he who broke the front door, but not intentionally. It was Lavenia who was pressing the fight— appellant struck her and she struck him with a bottle.

Appellant testified that he did go to the Herndon home about 12:15 or 12:30 on the night of January 29th or 30th and knocked on the door and one of the girls let him in. He had been staying there nights. Robert Scott, Lavenia and Marlene were there and

they all sat down and talked forty-five or fifty minutes. Robert went out to look for his coat and Lavenia closed the door on him, "the door closed and [he] hit it and busted the door." Robert came in and asked where his coat was, and appellant started to tell him, and then Lavenia got mad, started upstairs and was cussing appellant. Appellant went upstairs to talk to her and "she run back out with a half a pint, getting ready to hit me—I tried to grab it and she dropped it—she went to reach down for it and I tried to kick it out of the way and she started scratching me in my face and on my arms and I picked up the bottle and without thinking, I hit her." Then they went back downstairs and talked. Lavenia told appellant she wouldn't see him anymore and he told her he did not care. She got mad, grabbed him and pushed him against the wall—from the kitchen to the front door. He asked her about six times to turn him loose, and he tried to pull away. He got back to the kitchen where she reached for a bottle on the table. She picked up one bottle, threw it and it broke. She reached for another bottle and appellant grabbed it and hit her. Appellant denied that when he entered the house he had any intent of having a fight or trouble with either of the girls.

Under the foregoing state's evidence, a submissible case was made. That evidence is that appellant broke in the locked door to gain re-entry into the Herndon home. This satisfies the words of the statute that the entry of a dwelling house, wherein there is at the time a human being, be accomplished "First, by forcibly bursting or breaking the wall or outer door, * * * or the lock or bolt of such door, * * *." (§ 560.040, supra.) There remained for the jury the question of appellant's *intent* to commit a felony therein, here as charged, intent to do great bodily harm to Lavenia. The jury could infer from appellant's prior reference in the first altercation that he would just as soon kill her, and from his statement at the time he broke in the door that if he could not have

her no one else was going to have her, that he possessed an ill will toward Lavenia. These facts, accompanied by the events taking place shortly thereafter (according to the state's evidence viewed in its most favorable light), justified the jury in concluding that appellant possessed the intent to commit the assault upon Lavenia. See State v. Horn, 209 Mo. 452, 108 S.W. 3, 6, holding that in a first degree burglary case, based upon an intent to commit some felony (an assault with a deadly weapon) in the dwelling after breaking and entering it, the jury could consider all that defendant said and did both before and after he actually entered the home as a part of the res gestae. Compare the burglary-rape cases of State v. Kirkpatrick, Mo., 428 S.W.2d 513; State v. Terry, Mo., 325 S.W.2d 1; and State v. Eddings, 71 Mo. 545.

The Second Amended Information here first stating that appellant "willfully and feloniously committed the offense hereinafter stated" goes on to set forth the acts charged in the language of the statute. Its meaning is clear and appellant could not have been misled as to the charge against him. Appellant's attack on the initial words of the information is thus without merit. State v. Taylor, 136 Mo. 66, 37 S.W. 907, State v. Miller, 359 Mo. 327, 221 S.W.2d 724.

According to the state's evidence, appellant struck Lavenia with a 7–Up bottle and with his hands and feet during the second altercation. Appellant admitted the striking with a bottle, but under the circumstances described by him. Apparently the charge of the felony committed in connection with the charge of forcibly breaking and entering the outer door of the Herndon residence is laid under § 559.190, RSMo 1959, V.A.M.S., which requires an assault with intent to do great bodily harm. § 559.220 defines common assault, a misdemeanor. Appellant's Point IV presents as claimed reversible error the failure of the court to give his requested Instructions Nos. 6 and 7, both dealing with his intent merely to make a common

assault upon Lavenia at the time he burst the door and entered the dwelling. As noted, appellant denied any intent of having a fight with either of the girls at the time he entered the home. Scott's description was that Lavenia was the aggressor and finally a fight ensued between appellant and Lavenia, both striking each other. The evidence was that Lavenia received no injuries which would require the services of a physician or hospitalization, i.e., no great bodily harm to her was actually rendered by appellant, as the jury could find. In State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, although involving a charge under what is now § 559.180 (assault with a deadly weapon, with malice aforethought, and an intent to kill), it was said, loc. cit. 204 S.W.2d 779 [9]: "But in general all agree that the classification of such weapons as 'deadly' may depend in part on the *effect* produced by them, and the strength of the assailant who wields them. And we think it can be further affirmed that the strength and vitality of the victim of the assault also may be considered." If the effect produced by a weapon and the strengths of the assailant and the victim may be considered by the jury on the issue of whether a deadly weapon was used, it should also be considered on the lesser offense of whether there was an *intent to do* great bodily harm or whether that intent related merely to a common assault. In State v. Shipley. 174 Mo. 512, 74 S.W. 612, 614, a case of felonious assault (apparently brought under the "deadly weapon" statute), it was held that an instruction on simple assault should have been given because "It was for the jury alone to find whether the rock which defendant was charged to have thrown at Ritter was a deadly or dangerous weapon. If it was not, the offense may have well been found to have been common assault only." See also State v. Reynolds, 126 Mo. 516, 29 S.W. 594, where the state's evidence was that defendant made an assault upon the victim with rocks, and finally struck at him with a knife, but the evidence was conflicting as to whether defendant used a knife, and there was no

evidence that the rocks were of a deadly and dangerous nature. It was held error to refuse to instruct on assault with intent to kill without malice aforethought and on common assault.

■ Instruction No. 2, embodying the state's theory, submitted only a felonious intent to do great bodily harm by the assault. The jury was limited to that submitted issue in its determination of whether burglary in the first degree was committed. Appellant's point and argument do not set forth with particularity the reasons why the court erred in refusing his requested instructions on the subject of intent only to commit a common assault. He says merely that Instruction No. 2 did not provide the safeguards included in his requested Instructions Nos. 6 and 7. He does not say that the requested instructions submitted a defense supported by the evidence. It is clear, however, that the "safeguards" consisted of having the jury consider a defense not included in Instruction No. 2. The jury could have found, considering all of the conflicting testimony, the relative sizes of the parties (Lavenia weighed 190 pounds), Lavenia's resultant injuries inflicted by the use of the 7–Up bottle (its nature as an instrument likely to produce great bodily harm being also for consideration), that appellant possessed only an intent to commit common assault, a misdemeanor. Thus if appellant were found not to have had an intent to commit a felony, he could not be guilty of burglary in the first degree. A defendant is entitled to an instruction on any theory the evidence tends to establish. State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914, 917 [5–7, 8]; State v. Bartley, 337 Mo. 229, 84 S.W.2d 637, 640 [6, 7] and cases cited; and State v. Drane, Mo., 416 S.W.2d 105, 107 [1, 2].

For error in refusing Instructions No. 6 and No. 7, the judgment is reversed and the case is remanded for new trial. Other claimed errors may not recur on retrial and need not be discussed.

BARRETT, and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.