[Criminal No. 565.   Filed June 26, 1923.]

[215 Pac. 1096.]

# W. H. PATTERSON, Appellant, v. STATE, Respondent.

1. FALSE PRETENSES—INFORMATION HELD TO CHARGE OFFENSE, IF ANY, UNDER SWINDLING STATUTE, AND NOT UNDER STATUTE FOR MAKING FALSE AND FICTITIOUS CHECK.—An information charging defendant with obtaining money from A. by making, uttering and delivering to her a draft on a firm named knowing there was no such firm and that said draft was false and fictitious, *held* not to charge an offense, under Penal Code of 1913, section 474, of making a false and fictitious bill, note or check, but that the offense charged, if any, was under the swindling statute, section 532, relating to obtaining money by means of a false or bogus check or written instrument.

2. FALSE PRETENSES—THAT DRAWEE OF DRAFT WAS NONEXISTENT DID NOT MAKE IT A FICTITIOUS OR BOGUS DRAFT.—That drawee of draft was nonexistent did not make it a fictitious or bogus draft.

3. FALSE PRETENSES—EVIDENCE HELD A VARIANCE IN THAT MONEY WAS NOT OBTAINED FROM PERSON NAMED. — Where an information charged defendant with obtaining money from A. by making, uttering, and delivering to her a draft on a nonexistent drawee, evidence that he procured A. to indorse the draft and that he then obtained the money from a bank in which she had no account and which was not then charged to A., though she later repaid the bank, was a fatal variance.

---

See 8 C. J., p. 182; 25 C. J., pp. 618, 642.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Judgment reversed and cause remanded.

Mr. Henry H. Miller, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The defendant appellant having been informed against under the name of J. C. Covington, on arraignment announced his true name to be W. H. Patterson, and the trial proceeded against him under the latter name. Under an information dated December 14, 1922 (we give its substance only), defendant was charged with knowingly and feloniously obtaining $50, lawful money of the United States, from Mrs. J. B. Armer, with intent to defraud her by making, uttering and delivering to her a draft on the Standard Medicine Company of Los Angeles, California, in words and figures as follows:

Citizens' State Bank at Five Points,

Phoenix, Arizona, Nov. 14th, 1922.

At sight pay to the order of Mrs. J. B. Armer $50.00, fifty and no/100 dollars, with exchange, value received and charge to account of

J. A. COVINGTON.

To Standard Medicine Co.,
Los, Angeles, Calif.

No Protest.
Take This Off.
Customer's Draft.

he, the said Covington, well knowing there was no such firm in existence as the said Standard Medicine Company, of Los Angeles, California, and that said draft was false and fictitious. The sufficiency of the information was not questioned by demurrer.

According to the evidence, the defendant first went to the Citizens' State Bank with the draft, or a draft,

showing a telegram purporting to be signed by the Standard Medicine Company, of Los Angeles, giving authority to draw on it for $50, and requested the bank to cash draft. This the bank refused to do. The defendant owed the son of Mrs. Armer a week's wages. Either at the suggestion of the bank or on his own initiative he went to the home of Mrs. Armer and procured her indorsement on the draft, and then he and Mrs. Armer's son returned to the bank with the draft and it was cashed for him. The bank's representative testified that the money paid to the defendant by the bank was not Mrs. Armer's money; that it was the bank's. It was not then charged to Mrs. Armer; she had no money in bank to cover it. Later on—just when the evidence does not show, but presumably after the draft was returned unpaid—Mrs. Armer gave her note to the bank for the sum of $50 and some time before the trial paid the note.

At the close of plaintiff's case, and at the close of the whole case, the defendant made a motion for a directed verdict on the ground of a variance between the information and the proof as to what defendant obtained from Mrs. Armer. The motion was denied. The ruling thereon is assigned as error. There are several other assignments of error, but since we are of the opinion that the court erred in refusing to direct a verdict, we will consider this assignment only.

The briefs and arguments filed in the case do not point out the section of the Penal Code under which this prosecution was had. We do not know why, except that it may be counsel was unable to determine. The name given to the offense in the information is "obtaining money by bogus draft." There are other expressions in the record that similarly characterize it. The phrase "false or bogus check" is found in section 532 of the Penal Code, and nowhere

else in our laws. This is what is commonly known as the "confidence game" or "swindling" statute. On the other hand, the information describes the instrument as "false and fictitious" and charges the defendant with making, drawing, uttering and delivering the same to Mrs. J. B. Armer—words common to the offense described in section 474 of the Penal Code defining the crime of making and uttering "any fictitious bill, note or check." However, it is quite clear that the facts set forth in the information do not constitute the offense described in section 474, since the fictitious instrument there mentioned is such only because the purported maker is nonexistent. *People* v. *Eppinger,* 105 Cal. 36, 38 Pac. 538. If any offense therefore is charged, it must be under section 532, *supra.* This section is as follows:

"Every person, who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person or persons any money, property, or valuable thing whatever . . . by means or by use of any false or bogus check, or by any other printed, written or engraved instrument, . . . shall be punished," etc.

It will be noted that to constitute the offense here defined it was necessary that the defendant, with intent to cheat and defraud Mrs. Armer, obtain from her "money, property or valuable thing whatever," by means of a false or bogus check, or some other instrument in writing.

The information alleges the instrument to be false and fictitious. In passing, and before we discuss the question of variance between the allegations and the proof, we may say that merely because the drawee of the draft was nonexistent would not constitute a fictitious draft nor a bogus draft. The drawer of a bill of exchange, or draft (the two being the same thing, 8 C. J. 40, § 19), and the drawee may be the same person, or the drawee may be fictitious, and not

affect the liability or responsibility of the originator of such instrument. 8 C. J. 182, §§ 309–311. The drawee may or may not have funds belonging to the drawer. At all events, the drawee is not legally bound to pay draft or bill of exchange until he has accepted it. The drawee's honesty or ability to pay, or his existence, may therefore be regarded as negligible in all transfers of the draft between the time of its issuance and its acceptance. The nonexistence of a drawee could not make the instrument fictitious, and that is the only reason the information gives for designating the draft in this case as false and fictitious.

On the question of variance, it is the contention of the defendant appellant that the allegation that he obtained $50, lawful money of the United States, from Mrs. Armer, is not supported by evidence showing that he obtained her indorsement upon the draft in question, even though this enabled him to cash the draft for $50. It seems to us this point is well taken. The rule with reference to allegation and proof in false pretense cases, as to the description of the property obtained, is the same as the rule in larceny; that is, one cannot allege in the indictment or information that one thing was fraudulently obtained and secure a conviction by proving something else was obtained. The *allegata* and the *probata* must correspond, or at least substantially correspond. It was necessary therefore for the prosecution to show by their evidence that Mrs. Armer, because of the nonexistence of the drawee in said draft, parted with $50 of her money. What did she part with? She was an accommodation indorser, nothing more nor less. She loaned her name and credit to the defendant so that he could go to the Citizens' State Bank, or anywhere else for that matter, and get the money. If she had signed a note payable to the bank, and the

money had been advanced to the defendant upon her credit, it would not have been different in legal effect. She was guaranteeing to anybody who did cash the draft that she would see that it was paid. Surely no one would contend that defendant had obtained $50 of her money if he had taken the draft with Mrs. Armer's indorsement on it and sold it to a butcher, a baker or a candlestick maker, instead of to the Citizens' State Bank. What he did obtain, if anything, was her good name and credit, and if he made sufficient false representations in securing her name to constitute the offense defined in section 532, an information, properly setting out those representations, and proof sustaining them, would doubtless reach the defendant. He did obtain from Mrs. Armer ''property or valuable thing,'' but he did not obtain $50 as alleged in the information.

The prosecution cites a line of false pretense cases which hold that an allegation in the indictment or information that the defendant obtained money is supported or sustained by proof that he obtained from the party defrauded his check. *State* v. *Germain,* 54 Or. 395, 103 Pac. 521; *State* v. *Foxton,* 166 Iowa, 181, Ann. Cas. 1916E, 727, 52 L. R. A. (N. S.) 919, 147 N. W. 347; *State* v. *Jackson,* 87 S. C. 407, 69 S. E. 883. We think this is a just and fair rule and agree entirely with it. But there is a vast difference between the legal effect of a check upon a bank and a bill of exchange drawn against some third party. The check is an order upon the drawee to pay, and the drawee always has funds of the drawer to meet the check or it has been arranged with for overdraft. In the cases cited the check was paid immediately upon presentation to the bank out of the funds of the drawer thereof, or, as in the Foxton case, it was immediately charged to the account of the person defrauded.

We think the motion for a directed verdict on account of a material variance should have been granted.

The judgment is reversed and the cause remanded.

McALISTER, C. J., and LYMAN, J., concur.