## SAM INGRAM v. STATE.

No. A-7547. Opinion Filed Jan. 2, 1931.
Rehearing Denied Jan. 17, 1931.
Dissenting Opinion, June 10, 1931.
(3 P. [2d] 737.)

144

Leahy, Macdonald & Files and L. H. Justus, Jr., for plaintiff in error.

The Attorney General, for the State.

ROWE, Special Judge. The plaintiff in error, Sam Ingram, hereinafter called defendant, was charged by information with the crime of obtaining money under false

pretenses, alleged to have been committed on or about the 20th day of June, 1925, in Osage county. He was charged jointly with W. G. Streetman, who was then deputy county treasurer of Osage county. The defendant was tax ferret of Osage county, having been duly employed by the county commissioners of said county. A severance was had, and the defendant took a change of venue to Tulsa county, where he was tried and convicted; the jury, however, being unable to agree on the punishment which was left to the trial court. The court fixed the defendant's punishment at two years in the penitentiary, and he was duly sentenced on said verdict and judgment. Motion in arrest of judgment was duly filed and overruled, as well as motion for new trial. To reverse the judgment rendered in pursuance of the verdict, he has duly lodged his appeal in this court.

The undisputed facts are that the defendant had been employed by the board of county commissioners of Osage county as tax ferret, having duly entered into a contract of employment with said board on the 6th day of June, 1923, for a period of two years, and later employed for a period of two additional years; that, under the contract, he was entitled to 15 per cent. of all sums collected from omitted property which he caused to be placed on the tax rolls. The evidence on the part of the state, in substance, is that on the 20th day of June, 1925, an original tax receipt in the sum of $19,635.07 was issued to the Sinclair Oil & Gas Company for the last half payment of certain taxes in Osage county. The original tax receipt showed certain amounts distributed to the state, county, townships, and municipality, and also school districts in certain sums, which would be actual proportionate distributions. While a duplicate of said tax receipts showed such distributions, less 15 per cent., which was shown on

the purported duplicate tax receipt as fees for the tax ferret. There is no conflict in the evidence as to the issuance of the tax receipts and duplicates different from each other. The deputy county treasurer, Streetman, testified that he made out the original and duplicate and that the duplicate was different from the original, in that the duplicate showed the tax ferret fees. The defendant also testified that he had requested Streetman to make out the original account showing the tax ferret fees, and gave as his reason for this that Mr. Orr, tax attorney for the Sinclair interests, was a friend of his and that it might be embarrassing to Mr. Orr if it showed that the property in question had been omitted from the tax roll and placed there by the tax ferret. Mr. Orr further testified that he had mailed the list of property in the regular way to the proper official. There is no dispute as to the duplicate showing the tax ferret fees, and this was a part of the record in the treasurer's office. It is also admitted that the defendant as tax ferret received the sum of $2,945.25, as fees out of this particular transaction. The defendant testified that he was acting in good faith, that the duplicate is exactly like the tax roll, and that, when he found the Sinclair Company did not have this property listed, he caused the same to be placed on the tax roll, in the usual and customary manner, and that he was following the custom that then prevailed in Osage county and other counties.

The deputy county treasurer, Mr. Streetman, testified that he made, issued, and delivered the tax receipts; that he thought there was nothing wrong in the way the matter was handled; that he had every reason to and did believe that the property had been discovered by the tax ferret in the usual way. The defendant further testified that he had gone to Mr. Orr's office to check some infor-

mation he had gotten relative to certain tank farms, and that he had complete information as to the taxable property in the county, of the Sinclair Company; that, after the tax roll had been made up and certified by the county treasurer, he examined it and found that the Sinclair Company's property was not on the roll; he did not know the company had mailed its return to the county assessor; and that he put the property on the tax roll as discovered by him in accordance with information he had gotten prior thereto. A deputy state examiner and inspector, Mr. Patrick, testified that at the time of this transaction the business of the tax ferret was handled in Osage county according to the general custom throughout the state.

The testimony further shows that, in some manner not shown in evidence, certain property of the Sinclair Oil & Gas Company had been omitted and was not shown on the tax roll. The evidence is that the return was made by this company and mailed in due course to the assessor. Evidence further tends to show that the property was placed on the tax roll and the defendant followed the custom and same course pursued in such matters for the past several years. It is urged on the one hand that the omission was due to a clerical error of a public official, while the state, at least, advances the theory that the omission was due to a scheme or plan of the tax ferret and public official of Osage county to defraud the county.

The defendant is prosecuted under section 9771, C. O. S. 1921, which is as follows:

"If any county treasurer in this state or his deputy, or any other person shall knowingly and willfully make, issue, and deliver any tax receipt, or duplicate tax receipt, required by this chapter to be issued by fraudulently making the tax receipts and its duplicate * * * different from each other with the intent to defraud the state of Okla-

homa or any county in said state or any person whomso-
ever, such treasurer or deputy treasurer or other person
shall be deemed guilty of a felony, and on conviction there-
of before any court of competent jurisdiction of this state,
he shall be sentenced to imprisonment in the penitentiary
for a time not less than one year nor more than five years,
in the discretion of the court."

Under the law in this state, the county treasurer has
authority: A. To issue tax receipts. B. To employ
deputies that have the same authority as the county treas-
urer has. C. To employ additional help and other clerks
who are not denominated deputies, but are merely a part
of his clerical force.

It will be observed that under section 9798, C. O. S.
1921, a tax ferret is employed by the board of county com-
missioners to assist the officers of the county in discover-
ing property not assessed for taxation. He is in no sense
a clerk of the county treasurer, nor could he be called a
public official, in the sense that a treasurer, for instance,
is a public official.

It is contended by defendant, under the first two speci-
fications of error, to wit, that the court erred in overruling
defendant's demurrer and that the court erred in refusing
to arrest the judgment, that the tax ferret could not legally
be charged with the commission of this offense, because
this statute pertains only to the county treasurer, his dep-
uties, or additional help employed by him.

It is urged that no other person could have legal ac-
cess to the county records and receipt book or authority to
issue such receipts, and therefore, if a person not falling
under the above class were to issue such receipt, he would
be guilty of forgery, and that the defendant, as tax ferret,
does not fall under this class, and could not, therefore, be
guilty of the crime charged in the information.

Defendant further contends that the doctrine of ejusdem generis should apply in the construction of this section; that is to say, that, where there is an enumeration of specific things followed by some general words or phrases, such general words or phrases are held to refer to things of the same kind and class as those specifically enumerated and mentioned. It seems apparent that this statute was intended to reach the deputy or clerks, who were actually connected with the county treasurer's office, and employees in the county treasurer's office. The defendant was a tax ferret, as shown by the evidence and as alleged in the information. He certainly had no connection with the office of county treasurer. The rule as announced by the Supreme Court of Colorado in the case of Gibson v. People, 44 Colo. 600, 99 Pac. 333, 335, seems to be in line with modern thought and supported by the great weight of authority. In that case the court held: "The familiar general rule, which is enforced in this jurisdiction, is that, where words of general import follow specific designations, the application of the general language is controlled by the specific. This is but a rule of construction, and is not allowed to defeat the plain legislative will; yet, where the legislative intent is doubtful, resort to rules of construction is proper. Applying this rule to this statute, and bearing in mind that its prime purpose is to provide for delinquent children, as nearly as may be, the care and training which their parents should give but which they do not afford, and to that end substituting governmental authority for parental control, it would seem entirely clear that by 'or any other person' the General Assembly meant other like persons; that is, such other persons as occupy towards the delinquent a relation similar to that of parent, legal guardian, or custodian, and upon whom rests the obligation of training either arising from the natural ties or created

by law. The persons specified by no means exhaust the whole genus, but it is apparent that there are other persons who may occupy towards the delinquent a relation similar to that sustained by those enumerated. For example, older brothers and sisters, other blood relatives, teachers, nurses, and companions, none of whom are enumerated, but are of the same genus."

In the case of State v. Jett, 69 Kan. 788, 77 Pac. 546, 547, the court said:

"It is a familiar rule of interpretation that, where particular words are followed by general ones, the latter are to be held as applying to persons and things of the same kind with those which precede. The acts charged against the defendant do not fall within the statute, under the interpretation there given, and we do not think it states an offense."

The Supreme Court of Indiana, in the case of Wiggins v. State, 172 Ind. 78, 87 N. E. 718, in construing a statute in that state, announced the rule as follows:

"Where words of specific and limited signification in a statute are followed by general words, the general words will be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown.

"Under Burns' Ann. St. 1908, § 2356, making it unlawful for a male person to entice a female to enter 'any house of prostitution, assignation, saloon or wine room where intoxicating liquors are sold, or any other place for vicious or immoral purposes,' an affidavit is sufficient which charges accused with enticing a female 'to enter into a certain house situated at No. 202, East Broadway street' in a city, county, and state named, 'for the purpose of having sexual intercourse with her,' as 'any other place' means place of like character with those previously enumerated."

In construing this section, it is apparent that the Legislature intended to cover a case where a person was in the office, such as a clerk, and who was not a deputy, in the event such persons made, issued, and delivered any tax receipt or duplicate, by making the original different from the duplicate, with intent to defraud the county. This being true, it follows that the defendant does not come within the purview of this section. This seems all the more apparent when the evidence is considered in connection with the law. It appears from the evidence that the defendant Streetman, deputy county treasurer, made, issued, and delivered the tax receipt, and that the defendant Ingram at the most only advised and suggested to Streetman that he make the receipt as he did, and, of course, unless Streetman was guilty of the offense, defendant Ingram could not possibly be. Johnson et al. v. State, 24 Okla. Cr. 326, 218 Pac. 179. It will be remembered that in this information the defendant was charged jointly with Streetman with the intention on the part of both defendants to defraud Osage county.

Following this rule of statutory construction, when taken in connection with the plain intention of the Legislature in various statutes quoted and referred to in this opinion, relating to the county treasurer, his deputies and clerks, it would seem to be the plain intention of the Legislature to make it possible to convict any person in the office of the county treasurer who made, issued, and delivered any tax receipt or duplicate by making the original different from the duplicate with intent to defraud the county. In fact, if the words, "Or any other persons," were not included in the statute, if such act were committed by a clerk in the office who was not a deputy, it would not apply.

It is further contended by the defendant that the evidence is insufficient to sustain the verdict of guilty. The information in this case charged that the defendants Ingram and Streetman "did then and there acting together, knowingly, willingly, wrongfully, unlawfully and feloniously make said tax receipt and its duplicate, or paper purporting to be its duplicate, different from each other with the unlawful and felonious intent, then and there of them, the said defendants, to defraud the county of Osage, state of Oklahoma."

It will be noted that a material allegation in the information is that the defendants performed the act alleged in the information with the intent to defraud Osage county. The evidence shows that, at the time the Sinclair Oil & Gas Company mailed its check to the county treasurer of Osage county, its property had been listed on the official tax roll of the county by the tax ferret, the defendant Ingram, and from the official records, as they then existed, the defendant was entitled to his fees when the money was paid, without regard as to how the original or duplicate receipt was issued. If the defendant Streetman had made out the receipt according to the records of Osage county as they existed, the defendant Ingram would have been entitled to his fees notwithstanding the manner and way the receipts were made, as shown by the evidence. It is plain to be seen from the evidence, that the mere act of making the original receipt different from the duplicate did not and could not have defrauded Osage county. The evidence further shows that the act of making the original receipt different from the duplicate did not and would not have defrauded the Sinclair Oil & Gas Company, but, of course, this is not charged in the information.

It was the theory of the state that the defendant Ingram pretended to discover the property of the Sinclair

Oil & Gas Company, when as a matter of fact he did not do so. There is some suspicion that this could have been true, although there is no direct evidence in the record to support this theory. Granting for the moment that this theory is true, would that be sufficient to sustain a conviction of the defendant on the crime charged in the information? It appears in the evidence that the assessment was put on the assessor's roll, showing that the assessor's list mailed by the Sinclair Oil & Gas Company was evidently received by the assessor and put on the roll by him, but the same does not appear on the official tax roll in the county clerk's office. There is no evidence in the record that the defendant Ingram had anything to do with the failure to transfer the entry from the assessor's roll to the official tax roll. That was not the duty of the defendant, and there is no direct evidence to show that he had any connection with it. There is some evidence that the defendant at times occupied the assessor's office as well as the county treasurer's office, but is this sufficient to sustain a conviction or connect the defendant Ingram with the failure to transfer the entry as it should have been done or to connect the defendant Ingram with the offense charged in the information? The question naturally arises, Did the act of the defendant Ingram and the defendant Streetman in issuing different receipts defraud Osage county, and is it necessary for the state to support the allegations in the information that the defendants acted together, issuing different tax receipts with intent to defraud Osage county? It is well settled that the state cannot set forth one state of facts in an information and sustain a conviction on another state of facts; that is to say, facts necessary to constitute a public offense must be charged in the information and supported by sufficient evidence, whether direct or circumstantial. Cheeves v. State, 5 Okla. Cr. 361, 114 Pac. 1125; Furrh v. State,

27 Okla. Cr. 283, 226 Pac. 1065; State v. Mitten, 36 Mont. 376, 92 Pac. 969.

In the light of the evidence and placing the most favorable construction on the same, the most that can be said is that Ingram defrauded Osage county by pretending to discover the property when in fact he did not discover it; however, there is no evidence to show that the issuing of the receipts different, as charged in the information, would have made any difference. It is also well settled that, where specific intent is an essential element of the public offense, it is necessary to prove the same whether by direct or circumstantial evidence. Patterson v. State, 25 Ariz. 276, 215 Pac. 1096, 35 A. L. R. 366.

In the case of Patterson v. State, supra, the rule seems to be clearly stated, and is as follows, to wit:

"Where an information charged defendant with obtaining money from A. by making, uttering, and delivering to her a draft on a non-existent drawee, evidence that he procured A. to indorse the draft and that he then obtained the money from a bank in which she had no account and which was not then charged to A., though she later repaid the bank, was a fatal variance."

In the case of State v. Taylor, 136 Mo. 66, 37 S. W. 907, 909, the court said:

"Nothing is better settled than that, having alleged a burglary to have been done with an intent to perpetrate a certain felony, evidence of another independent felony cannot be received. East says: 'But, whatever be the felony really intended, the same must be laid in the indictment and proved agreeably to the fact. * * * And so, if it be alleged that the entry was with intent to commit one sort of felony, and the fact appear to be that it was with intent to commit another, that is not sufficient.' "

In the case of Simpson v. State, 81 Fla. 292, 87 So. 920, the court said:

"Where a specific intent is required to make an act an offense, the doing of the act does not raise a presumption that it was done with that specific intent.

"Where a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proven as the act itself, and must be found by the jury as a matter of fact before a conviction can be had."

In the case of Roberts v. People, 19 Mich. 401, the court said:

"We think the general rule is well settled, to which there are few, if any, exceptions, that when a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury, as matter of fact, before a conviction can be had."

If, therefore, the proof in this case established the fact that the defendant Ingram pretended to discover this property, but did not in fact discover the same, and collected tax ferret fees thereon, although he was not justly entitled to collect the same, under the rule thus announced, we are forced to the opinion that the evidence is not sufficient to support a conviction under the information in this case. The mere doing of an act where specific intent is required does not raise a presumption that the act was done with that specific intent. It is argued on behalf of the defendant in error that, in view of the statutes in this state in which the distinction between accessories and principal and principals in the first and second degree in cases of felony is abrogated, and all persons concerned in the commission of a felony whether they commit the act or aid and abet in its commission are principals and must be prosecuted as such, and further, that an accessory may be prosecuted, tried, and punished, though the principal be neither prosecuted nor

tried, or though he may be tried and acquitted, would apply in this case and that the conviction should be sustained on this theory of the law. We differ with this view for the reason that it seems well settled that the statutes pertaining to accessories and principals do not affect the rule that a person who is present aiding, abetting, and advising cannot be convicted of the offense unless the one who actually committed it was guilty, unless, of course, the proof shows that he acted through an innocent agent, and there is no proof as to this in the instant case. The allegations as stated in the information are that the offense with intent on the part of Streetman and Ingram to defraud Osage county was committed jointly; however, there is no dispute in the evidence that Streetman in fact committed the act and Ingram only aided, advised, and counseled the same. While under our statute it is not necessary that Streetman be convicted or even tried in order to convict Ingram, yet, before a verdict of conviction against Ingram would be permitted to stand, in view of the fact that he was tried separately and in view of the allegations in the information, the evidence must have been sufficient to have warranted a conviction against Streetman, his codefendant. Under the evidence, it is well-nigh impossible to determine or see whether the jury convicted the defendant of the crime charged or whether they convicted him on the theory that he pretended to discover the property of Sinclair & Co., when in fact such was not the case. We do not think the evidence is sufficient to have warranted a conviction of Streetman under the allegations contained in the information, and it is therefore totally insufficient to sustain the conviction of the defendant of the crime charged in this case.

It is further urged that the trial court erred in giving instructions numbered 9, 13 and 19 and especially in-

structions 13 and 19. If it were not necessary to reverse this case on other grounds heretofore pointed out herein, we are of the opinion that instructions 13 and 19 were erroneous and prejudicial to the rights of the defendant when considered in connection with the allegations contained in the information and the evidence in this case.

While the evidence shows that the defendant would still have been entitled to his fees, in view of the actual showing on the record, that is to say, the act of making the original receipt different from the duplicate did not and would not have defrauded Osage county, even though the state's theory was correct, and while the defendant does not come within the purview of the statute under which he was prosecuted, we are not passing on the guilt or innocence of this defendant as to any other charge.

For the reasons herein stated, this cause is reversed and remanded.

DAVENPORT, J., concurs.

EDWARDS, P. J. (dissenting). I am not able to agree with the majority opinion. Defendant is charged with one Streetman, a deputy county treasurer; it being alleged they acted together in issuing a tax receipt different from its duplicate, in violation of section 9771, Comp. Stat. 1921. A severance was had, and defendant was tried alone. Defendant was employed as a tax ferret of Osage county, by which contract he was to have 15 per cent. of the tax money paid on property which had been omitted from the tax roll and which had been discovered and placed thereon by him. He had access to and used the office of the county assessor and the county treasurer. The majority opinion correctly states that there is no dispute in the evidence that Streetman, the codefendant, committed the act, and Ingram, the defendant

here, aided, advised, and counseled the same. The majority opinion holds that, while it was not necessary that Streetman be convicted or even tried in order to convict Ingram, but says:

"Yet, before a verdict of conviction against Ingram would be permitted to stand, in view of the fact that he was tried separately, and in view of the allegations in the information, the evidence must have been sufficient to have warranted a conviction against Streetman, his codefendant."

This statement in the opinion is contrary to several opinions of this court and to sections 2574 and 2575, Comp. Stat. 1921, which are as follows:

"2574. The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal.

"2575. An accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted."

The majority opinion holds that there is not sufficient evidence to prove that the act of issuing the duplicate tax receipt different from the original was with intent to defraud Osage county. It is a general principal that every person is presumed to have intended to do what he has done and intended the immediate and natural consequences of his act. It is also a general principle that intent, being a state of mind, ordinarily cannot be proven by direct

and positive testimony, but must be proven by circumstances.

It appears to me that there is abundant proof of the intent of defendant to defraud Osage county. There is evidence to prove a general conspiracy to defraud Osage county and its municipalities by the collection by defendant of tax ferret fees on taxes paid on property claimed to have been discovered by the tax ferret as omitted property when as a matter of fact the tax ferret knew that the same was not omitted property, but was on property which had been listed for taxation. Defendant made his contract as tax ferret with the board of commissioners of Osage county June 6, 1923. On the same day defendant entered into a contract with one Buzan, a deputy county assessor, that such deputy assessor would devote his spare time to procuring information and data for the furtherance of defendant's contract as tax ferret, and that, in consideration of Buzan's services, defendant was to pay him one-half of the net cash proceeds derived as such tax ferret, settlement to be made every 60 days. In addition to being a violation of law by paying additional compensation to an officer to perform duties, it thus became profitable to Buzan, the deputy assessor, as well as defendant, to prevent the assessor's office from being zealous in seeing that all property was placed on the tax roll. By omitting property, defendant and Buzan might "discover" the same and put it on the tax roll as omitted property, and thus secure the 15 per cent. of the taxes. In this case the Sinclair Oil & Gas Company made a return of their property to the county assessor's office. No notice was given to the taxpayer as required by law before the alleged omitted property was placed on the roll, and at the time the tax was paid defendant had his codefendant, Streetman, make the tax receipt that was sent

to the taxpayer to show a proper distribution of the tax as if there were no fees paid the "tax ferret," while the duplicate receipt retained in the county treasurer's office showed the distribution of the tax less the tax ferret fee, which in this instance amounted to more than $2,900. It is plain that the purpose in failing to notify the taxpayer of his property as omitted was to prevent the taxpayer disclosing to the county treasurer that he had made a return of the property for taxation, as this would defeat the claim of defendant as tax ferret of his fees. The same purpose would cause defendant as tax ferret and his codefendant, Streetman, to have the tax receipt sent to a taxpayer show a proper distribution of the tax as if no ferret's fees had been collected; for, if the receipt showed a collection of tax ferret fees, the taxpayer might investigate or inform the county treasurer and thereby defeat the collection of the tax ferret fees. As further proof of intent as a general scheme, the record dicloses there were several hundred instances of this kind in which property returned by the taxpayer had been omitted from the tax roll. What stronger proof of intent could be made.

Attached to the application for a change of venue, a part of the record, is a finding of facts and conclusions of law by the district judge of Osage county in a civil suit involving the same matter. This is very nearly a summary of the record here. The court, among other things, finds as follows:

"* * * The defendant Ingram procured a tax ferret contract with the county commissioners on the 6th day of June, 1923, which was finally executed about the hour of three o'clock on said date. Within three hours from that time, the defendant Ingram and Buzan entered into an illegal written contract wherein the defendant Buzan agreed to devote spare time not demanded by his regular employment, to procure information and data necessary

to the fulfillment of Mr. Ingram's contract, * * * the consideration therefor being that Buzan was to receive one-half of the net proceeds in cash which the said Ingram was to derive for his services as tax ferret of Osage county, and further providing that settlements should be made every 60 days after the first settlement. This contract plain and unambiguous was prepared by and acknowledged before Mr. Paul Comstock, a brother-in-law of Mr. Buzan, under such circumstances as to show to my mind, guilty knowledge on the part of the defendants Ingram and Buzan that they were entering into an illegal contract. * * *

"After this contract was made and entered into, more than a thousand names were omitted from the succeeding tax rolls that had been on the previous year's tax roll. We find great numbers of persons who rendered their property for taxation in the ordinary and usual manner totaling some three millions of dollars, whose names were left off the tax roll even after they had rendered their assessments to the assessor and later placed on the tax roll by Sam Ingram in the exact amount of the return previously made to the assessor. We find one item, to wit, the Sinclair Crude Oil Purchasing Company, who duly rendered their assessments on two different sheets, one assessment sheet showing approximately $700,000 in property and the other assessment sheet showing approximately $1,637,-000 in property. These two returns were supposed to have been mailed by the Sinclair Crude Oil Purchasing Company in the same envelope to the county assessor. The one for $700,000 appears regularly upon the tax rolls. The one for $1,637,000 appears to have been placed upon the tax rolls by the tax ferret. When the Sinclair Company undertook to pay their taxes, to wit, on January 27, 1926, they sent to the county treasurer a check in the total sum of $32,336.17 for the first half. The original receipt returned to the Sinclair Company does not show any tax ferret fees. The duplicates which were filed in the treasurer's office and in the county clerk's office by the treasurer, show an erasure and a change entirely from the original tax receipts, and show $3,158.50 to the tax ferret.

Again on June 12, 1926, when the last half of the said taxes were paid by the Sinclair Company, the same procedure was gone through with. Mr. Streetman, the clerk in the treasurer's office who wrote those two receipts, testifies that he knowingly made the original tax receipt different from the duplicates, and at the instance and request of Mr. Ingram, who on account of his friendship for Mr. Orr, the tax attorney for the Sinclair Company, did not want the tax ferret item to show on the original receipt, thinking that Mr. Orr might be subjected to criticism by his superior officers. I do not believe that this was the real reason for making the original receipt and the duplicate receipts differently. I think if the original receipts had been made to show approximately $6,200 paid to the tax ferret, that the Sinclair Company would have complained immediately, and the tax ferret realized that he would not have been entitled to this sum; and that the original receipts were made different from the duplicates in order to deceive the taxpayer, and to prevent the taxpayer from knowing that any money was paid to the tax ferret. * * *"

The entire record leads to the irresistible conclusion that defendant, with the connivance of some one in the office of the county assessor, and probably some one in the office of the county treasurer, concocted a scheme to defraud Osage county by abstracting or concealing property returns made by taxpayers and then pretending to discover the omitted property and to collect fees for having it placed on the tax roll, and that by such scheme they did succeed in an outrageous defrauding of Osage county; that the issuing of the tax receipt different from its duplicate was with criminal intent and in furtherance of the general scheme to defraud. Defendant ought not to be allowed to defeat justice by the flimsy excuse that a criminal intent is not proven.