THE STATE v. D. E. WILSON, Appellant.

Division Two, November 23, 1909.

1. **INFORMATION: Intent to Cheat and Defraud: Statutory Form.** Where an information, based on section 2213, Revised Statutes 1899, does not undertake to adopt the form of the charge embraced in the statute, the cases of State v. Terry, 109 Mo. 601; State v. Kain, 118 Mo. 5, etc., wherein it was held that the statute in undertaking to prescribe the form of the indictment was unconstitutional, have no application.

2. ———: ———: **Sec. 2213, R. S. 1899; Purpose of Statute.** Sec. 2213, R. S. 1899, was directed against the obtaining of money or property from a person whose confidence has been first secured, by and through means of false and fraudulent representations in connection with acts done, with the intent to cheat and defraud. Its purpose was to provide for a class of false representations not included in some other section dealing with the subject of ordinary false representations. It was intended to reach a class of offenders known as "confidence men," who obtain the money of their victims by means or the use of some trick or representation designed to deceive.

3. ———: ———: ———: **Traveling Salesman: Cashing Draft.** The acts and representations of a defendant who represented himself as the agent of a company whose goods and products a merchant carried in stock; who as such agent took an order for goods upon said company from said merchant; who, having thus obtained the confidence of the merchant, represented to him that a draft he was expecting from said company had not arrived, and that he was in consequence short of money to pay his necessary traveling expenses, and who thereby obtained

money from the merchant upon a draft drawn by said defendant on said company, are embraced within the offenses denounced by section 2213, Revised Statutes 1899; and the information set out in the statement is held sufficient.

4. **INTENT TO CHEAT AND DEFRAUD: Evidence: Other Attempts.** Testimony tending to show that defendant, charged under section 2213, Revised Statutes 1899, with obtaining money fraudulently by means of a trick and deception, and false and fraudulent representations, had perpetrated or undertaken to perpetrate frauds upon other persons, thereby obtaining money from them under the same or similar circumstances, and by use of the same means, at or near the time the acts were committed in the case on trial, and at other towns in the same section, is competent to establish his intent or motive in the particular acts charged to be fraudulent, the intent of defendant to defraud being a matter in issue.

5. **OBJECTION: Insufficient.** A mere "We object" is an insufficient objection. An objection during the progress of the trial should indicate some reason why the testimony is objected to.

6. **EVIDENCE: Affidavit and Complaint.** An affidavit and complaint, not in all respects as full as the information, but in no respect contradicting it, and in no respect impeaching the affiant or contradicting his testimony, are immaterial and are properly excluded.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

(1)   Sec. 2213, R. S. 1899, upon which the information in this cause is predicated, is directed against the obtaining of money or property from a person whose confidence has first been secured by another by and through means of false and fraudulent representations and acts made and done with the intent to cheat and defraud. The series of representations and acts set out in this information bring this offense clearly within the class of cases defined by this section, and such offense is a felony regardless of the value of the

property so obtained. State v. Bayne, 88 Mo. 604; State v. Woodward, 156 Mo. 143; State v. Jackson, 112 Mo. 585; State v. Pickett, 174 Mo. 667; State v. Vandenberg, 159 Mo. 230. (a) The false and fraudulent representations, pretenses and statements, the acts and things constituting the trick and deception, and all the constituent elements of the offense are set out with particularity and precision and the information fully informs defendant of the nature and cause of the accusation. State v. Woodward, 156 Mo. 143; State v. Pickett, 174 Mo. 663; State v. Vandenberg, 159 Mo. 230; State v. Martin and Sneed, decided by this Court at the January call, but not yet officially reported. (b) The fact that defendant could have been prosecuted under other sections of the statute, fixing different punishments, does not preclude a prosecution under this section when the facts are sufficient to bring the offense within the class there condemned. State v. Porter, 75 Mo. 171; State v. Vandenberg, 159 Mo. 230; State v. Williams, 77 Mo. 310; State v. Beauchleigh, 92 Mo. 490. (2) During the progress of the trial defendant objected to the introduction of evidence tending to show that he had obtained money from other persons under the same and similar circumstances, and at about the same time and in the same section of country. For the purpose of showing the intent to cheat and defraud in the present case, this evidence was clearly competent, as has been uniformly held by this court. By an appropriate instruction the trial court specifically told the jury the sole purpose for which this evidence could be considered, and its effect was properly limited to the intent. This action on the part of the court was eminently proper. State v. Jackson, 112 Mo. 590; State v. Bayne, 88 Mo. 609; State v. Wilson, 143 Mo. 345; State v. Turley, 142 Mo. 411. (a) The objection "we object" is no objection and wholly insufficient. State v. Harlan, 130 Mo. 395; Rice v. Waddell, 168 Mo. 120; State v. Goforth,

136 Mo. 116; State v. Crone, 209 Mo. 330; State v. Page, 212 Mo. 239.

FOX, J.—The defendant in this cause has brought this case to this court by appeal from a judgment of the circuit court of Texas county, Missouri, convicting him of obtaining fraudulently by means of a trick and deception, false and fraudulent representations the sum of $25 from one John H. Bauch. The amended information, which was duly verified, upon which the defendant was tried, was predicated upon the provisions of section 2213, Revised Statutes 1899. The sufficiency of the information was challenged in the trial court by a motion to quash, as well as in the motion in arrest of judgment, hence it is well to reproduce the information upon which the judgment in this cause is based. Omitting formal parts, it is as follows:

"John H. Sanks, prosecuting attorney, within and for the county of Texas and State of Missouri, upon his information and belief informs the court that D. E. Wilson on the 10th day of January, 1908, in the county of Texas and State of Missouri, then and there with intent unlawfully and feloniously to cheat and defraud one John H. Bauch, then and there unlawfully, knowingly and feloniously by use of a trick and deception and false and fraudulent representation, statement and pretense, did falsely and fraudulently represent and pretend to the said John H. Bauch that he, the said D. E. Wilson, was then and there the representative and authorized agent of the Pratt Food Co. of Philadelphia, Pennsylvania, a corporation duly incorporated and existing under the laws of the State of Pennsylvania, and that he, the said D. E. Wilson, had full right and authority from the said corporation, then and there to transact business for said corporation; to sell and contract for the sale of the goods and products of said corporation. And to furnish advertising matter to the dealers in said goods and products.

That he, the said D. E. Wilson, was in the employ of said corporation and sent by the said corporation for the purpose of selling the goods and products of said corporation and furnishing and distributing the advertising matter of said corporation to dealers.

"And the said D. E. Wilson in pursuance of his purpose and intent to cheat and defraud the said John H. Bauch as aforesaid, did then and there as the agent and representative of said corporation, pretend to and did sell to the said John H. Bauch a bill of goods and products of the said corporation, and then and there take an order from the said John H. Bauch for advertising matter of the said corporation, advertising the goods and products of the same.

"Which order for said goods and advertising matter is in the words and figures as follows:

" 'Order No. . . . . . . . .      Date . . . . . . . .
" 'M. . . . . . . . . . . . . . . . . . . .
Ship to John M. Bauch
At Cabool, Mo.
How ship, Freight.
When, At once.
Terms, March 1st 60 days.

. . . . . . . . . .   . . . . . . . . . . . . . . .   . . . . . . . . . . . .   . . . . . . .
" '1000 Letter heads
1000 Bill heads
1000 Statements
1000 Envelopes
500 Hand Books
Plenty of signs to tack upon counter
Plenty of large Litho signs.
1-2 bale 12-lb. sacks Stock Food
" 'Printed like sample attached.
" 'Ship at once.'

"And he, the said D. E. Wilson then and there represented to the said John H. Bauch, that he had expected to receive a draft or check from the said corporation to defray his traveling expenses as represen-

tative of the said corporation, but that said draft or check had not been received, that he, the said D. E. Wilson, was in need of money to defray said traveling expenses, and requested the said John H. Bauch to cash a draft of the said corporation for the sum of twenty-five dollars for the purpose of defraying said traveling expenses, which said draft he, the said D. E. Wilson then and there drew on said corporation, said draft being in the words and figures as follows:

$25.00          " 'Cabool, Mo. 1-10-1908.

" 'At sight pay to the order of John H. Bauch, Twenty-five dollars, value received, and charge the same to the account of D. E. Wilson.

" 'To Pratt Food Co.

" 'No.    Phila. Pa.'

"Which said draft the Pratt Food Co. refused to honor and pay, but returned the same to the said John H. Bauch; and the said John H. Bauch believing the said false and fraudulent representations and statements and pretenses made as aforesaid by the said D. E. Wilson to be true, and being deceived thereby, was induced by reason thereof, and did then and there cash said draft, and in pursuance thereof, paid to the said D. E. Wilson the sum of twenty-five dollars, lawful money of the United States, of the value of twenty-five dollars; and the said D. E.Wilson by means and use of said trick, deception, false and fraudulent representations, statements and pretenses so made as aforesaid, then and there unlawfully, knowingly and feloniously, did obtain from him the said John H. Bauch the sum of twenty-five dollars, the money and property of the said John H. Bauch, with the intent then and there unlawfully and feloniously to cheat and defraud him, the said John H. Bauch, of the same.

"*Whereas,* in truth and in fact, the said D. E. Wilson did not have any right or authority then and

there to transact business for said corporation, and was not then their representative or authorized agent of said corporation to sell and contract for the sale of the goods and products of the said corporation, or the furnishing of advertising matter to dealers for said corporation. That he was not employed in any manner by said corporation; and he, the said D. E. Wilson, well knew that he, the said D. E. Wilson, did not have any right or authority then and there to transact business for said corporation or to sell the goods and products of the same, or furnish dealers with advertising matter, advertising the business of said corporation, or to receive any draft or checks or money from the said corporation in any manner, to defray his traveling expenses; and he, the said D. E. Wilson, was not then and there or at any time sent by the said corporation to represent said corporation in any manner whatever, against the peace and dignity of the State.''

Upon the overruling of the motion to quash this information the defendant was duly arraigned, entered a plea of not guilty and the trial proceeded. The testimony developed upon the trial of this cause tended substantially to establish the following state of facts:

That John H. Bauch, about January 10, 1908, and prior thereto, was engaged in the milling and mercantile business in the town of Cabool, in Texas county, Missouri, and handled, among other things, Pratt's Foods; that on the morning of January 10, 1908, defendant went to Bauch's store and stated that his name was Wilson, and that he was the traveling salesman and representative of the Pratt Food Company. After inquiring of Bauch concerning his supply of such foods, defendant stated that his company, owing to the fierce competition it was then encountering, was preparing and furnishing free to its customers some special advertising matter. On being advised by Bauch that his supply of such advertising matter, including letter and bill stationery, was about exhausted, defendant re-

marked that he had better send him some, and there-upon took from his pocket an order book, and, after writing in the book certain items which he called aloud as he entered them on the order book, he asked Bauch if that would be sufficient, to which inquiry Bauch replied in the affirmative. Bauch then informed defendant that he was in need of some twelve-pound sacks of stock food and directed defendant to send him one hundred pounds. Defendant placed this on the order with the advertising matter, and, after describing to Bauch some of the territory in which he said he was the traveling representative of the Pratt Food Company, and after ascertaining that Bauch would be in the store at a later hour that morning defendant left the store, saying that he would return. Soon thereafter defendant returned to the store and went to the office desk where Bauch then was, and informed Bauch that he had failed to get his check for traveling expenses and was about out of money, and requested Bauch to cash for him a draft, in the sum of $25. Bauch agreed to accommodate him and defendant filled out a blank draft which he took from his pocket, and Bauch gave him the $25. The draft was drawn on the Pratt Food Company, and was never paid, as defendant was in no manner connected with, and had at no time been the representative or employee of that company. When defendant received the money he took from his pocket the order, which, on the previous trip to the store, was taken, and, after placing it in a stamped envelope, remarked that he would get it off on the morning mail. He then left Cabool on the morning train, saying he was going to Thayer, Missouri. After defendant's arrest he stated to Bauch that his reason for doing as he did was because he had been drunk. Bauch let him have the money, relying upon his representations and statements that he was the agent of that company, and his conduct and acts in connection with taking the order, etc.

The testimony also discloses that at the town of Fordland, Webster county, Missouri, a distance of about fifty-three miles from Cabool, and located on the same line of railroad, defendant, on January 11, 1908, went to another customer of the Pratt Food Company, Dr. John W. Good, and made the same representations and statements as he had made to Bauch. On that occasion he told Dr. Good that he would have the company send him some calendars and stationery, and after taking out his order book, and writing what he said, was a requisition on the company for the calendars and advertising matter, stated that he was a little shy on traveling expenses, and asked Dr. Good to cash for him a $10 draft. The doctor, needing for immediate use the money he then had on hand, declined to cash the draft, and thus escaped being fleeced.

Again, on January 13, 1908, at the town of Rogersville, located about sixty miles from Cabool and on the same line of railroad, and in the same direction from Cabool as Fordland, defendant called on N. T. Bowles, a druggist, and dealer in Pratt's Foods, and introduced himself as Pratt's agent, and, after taking an order from Bowles for some food and stationery and advertising matter, he said that he was in a hurry, and that some of the business men would have to help him out, as he was in need of money. He asked Bowles to accompany him to the bank and identify him in order to enable him to cash a draft. This Bowles did, and on his endorsement, defendant's draft on the Pratt Food Company for $25 was paid. Payment on this draft was also refused by the Pratt Food Company, and Bowles was required to take up the draft and refund to the bank the $25.

Defendant actually mailed to the Pratt Food Company the various orders he had thus taken, but attached no signature, and these orders and papers were received by the company, but not recognized, because defendant was not their agent.

At .the close of the evidence the court gave instructions to the jury numbered 1, 2 and 3. It is not essential that we reproduce such instructions, but it is sufficient to say that instruction numbered 1 was predicated upon the allegations in the information and required the jury to affirmatively find the existence of every essential element necessary to constitute the offense charged. Instruction numbered 2 simply limited the purpose of evidence introduced by the State of other similar offenses committed by defendant. Instruction numbered 3 appropriately directed the jury upon the subjects of presumption of innocence, the burden of proof and reasonable doubt. The cause was then submitted to the jury and they returned their verdict finding the defendant guilty as charged and assessed his punishment at imprisonment in the penitentiary for a term of four years. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Sentence and judgment followed in conformity to the verdict returned, and from this judgment the defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

The first legal proposition with which we are confronted, as disclosed by the record, is the challenge by the defendant to the sufficiency of the information. The statute upon which this information is predicated is section 2213, which, so far as it relates to the information in this cause, provides that "every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person or persons, any money, property or valuable thing whatever, by means or by use of any trick or deception or false and fraudulent representation or statement or pretense, or by any other means or instrument or device, commonly called 'the confidence game,' or by means or

by use of any false or bogus check, or by any other written or printed or engraved instrument, or spurious coin or metal, shall be deemed guilty of a felony, and upon conviction be punished by imprisonment in the penitentiary for a term not exceeding seven years.''

It may here be noted that in addition to the provisions of the statute, as herein indicated, it also makes provision as to the form of an indictment, but it will be observed that the information in the case at bar does not undertake to adopt the form of the charge as is embraced within that section; hence it follows that the cases of State v. Terry, 109 Mo. 601; State v. Cameron, 117 Mo. 371, and State v. Kain, 118 Mo. 5, wherein it was held that that statute in undertaking to prescribe the form of the indictment, was unconstitutional, has no application to the information in the case at bar. Manifestly the provisions of section 2213 were directed against the obtaining of money or property from a person whose confidence has first been secured by and through means of false and fraudulent representations in connection with acts done, with the intent to cheat and defraud. As was said in the case of State v. Pickett, 174 Mo. 663, the purpose of this statute was to provide for a class of false representations not included in some other section dealing with the subject of the ordinary false representations. It was intended to reach a class of offenders known as ''confidence men,'' who obtain the money of their victims by means of or by the use of some trick or representation designed to deceive. The very essence of the crime denounced by section 2213 is that the injured party must have relied upon some false or deceitful pretense or device and parted with his property.

After a careful analysis of the charge as embraced in the information in the case at bar we are of the opinion that the acts and representations as made by the defendant, which are set out in detail

in the information, clearly place this offense within
the class of cases defined by section 2213. It must
not be overlooked that the defendant in the case at
bar at the very inception of his dealings with the
prosecuting witness sought to obtain his confidence
by representations that he was acting as the agent
of a firm dealing in goods and products that the
prosecuting witness carried in stock; and it further
appears from the allegations in the information that
to thoroughly obtain such confidence of the party
charged to have been defrauded he took his order for
certain goods and products as the agent and sales-
man of the firm which dealt in such goods and pro-
ducts. All of these representations are alleged in the
information and properly so, for the trick and decep-
tion consisted in convincing the prosecuting witness
that he was the agent and traveling salesman of the
firm he claimed to represent, thereby obtaining his
confidence to the extent that, upon the false and fraud-
ulent representation that he had expected to receive
a draft or check from the Pratt Food Company to
defray his traveling expenses, but that said draft or
check had not been received, he induced John H.
Bauch, the prosecuting witness, to cash a draft drawn
by the defendant upon the Pratt Food Company for
the sum of $25 for the purpose of defraying the travel-
ing expenses of the defendant.

We are unable to conceive a series of representa-
tions and acts, all of which are averred in the infor-
mation, which present more strongly and clearly a
case contemplated by the provisions of section 2213.
The false and fraudulent representations, pretenses,
statements and acts done by the defendant, which
clearly point to a trick and deception, are all set out
with remarkable particularity and precision in the
information. In our opinion every essential element
necessary to constitute an offense under that section
is embraced in the information.

The defendant in this case doubtless realized that, if he simply requested the cashing of the draft upon the Pratt Food Company, in all probability his request would not be granted; hence, he resorted to the deception and trick of impressing the prosecuting witness that he was the agent and representative of a business concern with which the prosecuting witness had had dealings, and thereby obtained his confidence, and manifestly it was through this · deception and trick that he obtained the money from the prosecuting witness upon the worthless draft.

We repeat, that ·this information sufficiently charges an offense under the provisions of section 2213, and is not out of harmony with the cases of State v. Woodward, 156 Mo. 143; State v. Jackson, 112 Mo. 585; State v. Pickett, 174 Mo. l. c. 667-668; State v. Vandenburg, 159 Mo. 230.

## II.

The record before us discloses numerous complaints at the action of the trial court in the admission and rejection of testimony. The defendant is not represented in this court, hence under the provisions of the statute we have examined in detail the record disclosing the objections and exceptions to the action of the trial court in the disposition of this cause. There was during the progress of the trial evidence introduced upon the part of the State tending to show that the defendant had perpetrated or undertook to perpetrate frauds upon other persons, thereby obtaining money from them under the same and similar circumstances at or near the time it is charged the acts were committed in the case at bar. Learned counsel for defendant in the trial court interposed objections to this character of testimony and properly preserved their exceptions. This proposition is not one of first impression, but has in many instances been in judgment before this court. In State v. Myers, 82 Mo.

558, Judge PHILIPS, who was then a Commissioner of this court, exhaustively reviewed both the English and American authorities upon this subject, and from such review deduced the conclusion that while as a general proposition a distinct crime, for which the party might be separately proceeded against, could not be given in evidence against the prisoner on trial for a single offense, this well settled rule has its exceptions equally well settled; and it was expressly held in that case, adopting the views of Judge STORY in Wood v. United States, 16 Pet. 342, that where "the question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive, in the particular act directly in judgment."

This court in State v. Turley, 142 Mo. 403, was confronted with the same proposition in a case of a similar character, and it was there said by Judge BURGESS, speaking for this court, that "evidence of other efforts upon the part of defendant made about the same time to obtain goods from other merchants, upon the same character of statements and representations, was admissible for the purpose of showing the intent of the defendant, and to this purpose that kind of evidence was properly restricted by the State's fifth instruction. So that defendant had no right to complain on that score." To the same effect is State v. Wilson, 143 Mo. 334. In fact an examination of the authorities in this State makes it manifest that the case of State v. Myers, *supra*, on this point, has been consistently followed and adhered to by this court in all of its subsequent rulings. [State v. Cooper, 85 Mo. 256; State v. Bayne, 88 Mo. 604; State v. Sarony, 95 Mo. 349; State v. Balch, 136 Mo. 103.]

The next objection to the admission of testimony to which the record directs our attention, is that of witness Shafer, introduced by the State, who testified along the line that the defendant was not the agent, representative or employee of the Pratt Food Company, and was in no manner authorized to solicit or take orders for them or in any manner represent that company. The objection to the testimony of this witness seems to be predicated upon the theory that there was no allegation in the information that defendant was not in fact the agent and representative of the Pratt Food Company. In this we are of the opinion that it is a misconception of the charge as embraced in the information. The information plainly charges that the defendant falsely and fraudulently pretended to be the agent of the Pratt Food Company, and this is followed by another allegation that he in truth and in fact was not such agent and had no authority to represent them. There is no merit in this objection and it must be ruled adversely to the appellant.

We find other objections disclosed by the record, but they are mere objections without assigning any reasons for them. In other words, it is simply stated that "we object." In view of the uniform expressions by this court that objections in that form are insufficient to preserve the rulings of the court upon them for review in this court, we deem it unnecessary to burden this opinion with a citation of the authorities. An objection to testimony during the progress of a trial should at least briefly indicate some reason for such objection, and in order to entitle it to the consideration of this court this should be done.

Upon the trial of this cause defendant offered in evidence the complaint and affidavit made by the prosecuting witness before the justice of the peace. The court, upon the objection of the State, excluded the complaint and affidavit, and in our opinion the action of the court was entirely proper. Prior to the offering

of the complaint and affidavit made by the prosecuting witness a preliminary inquiry was made concerning the making and signing of the affidavit, to which inquiry prompt answers were given. The purpose of offering this complaint and affidavit as made before the justice of the peace was not disclosed by counsel for appellant in the trial of this cause, and manifestly the only theory upon which such offer was made would be that it tended to contradict or impeach the testimony as given in the trial of the cause by the prosecuting witness. The affidavit and complaint as made before the justice is fully set out in the bill of exceptions, and we have carefully examined it, and while it is true that it does not set forth all of the details of the offense as fully as the information by the presecuting attorney, yet it contains nothing which in any way contradicts or has a tendency to impeach the statements as made by the prosecuting witness upon the trial of this cause; hence we have reached the conclusion that this testimony was immaterial. It had no tendency to prove or disprove any of the issues involved in this proceeding, nor did it tend to contradict or impeach any witness in the proceeding.

## III.

This leads us to the consideration of the instructions given by the court. Instruction numbered 1 fully covered the charge in the information, and required the jury to find every essential fact necessary to constitute the offense. There was no error in that instruction. Instruction numbered 2 was a very appropriate instruction, limiting the purpose for which evidence was offered by the State during the progress of the trial, to which reference has heretofore been made, as to the perpetration of frauds upon other persons at or near the time it is charged this offense was committed, in the same section of the country and under similar circumstances. This instruction was entirely

proper, and is in accord with what this court held in State v. Turley, *supra*, concerning evidence of this character, that it should be properly restricted to the purpose for which it was introduced, that is to say, in ascertaining the intent to defraud, which was an issue in the cause.

Instruction numbered 3 fully covered the subject of the presumption of innocence, and informed the jury that the burden of proof rested upon the State, and required them to find the guilt of the defendant beyond a reasonable doubt, and directed them, in the usual manner, that if they entertained a reasonable doubt of the defendant's guilt, they should give him the benefit of it and acquit him.

## IV.

The defendant not being represented in this court has led us to make a very careful examination of the disclosures of the record with the view of ascertaining whether or not there was any substantial error committed during the progress of the trial of this cause. After such examination we are clearly of the opinion that there was no substantial error committed by the trial court which would authorize the reversal of this judgment. No one can read in detail the testimony developed upon the trial without being convinced that the defendant is guilty of the perpetration of the fraud charged in the information. The rulings of the court upon the admission and rejection of evidence were entirely in accord with the well-settled principles of law applicable to that subject. The instructions of the court fully and fairly covered every subject to which the testimony was applicable. Entertaining these views, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.