[Criminal No. 870.   Filed May 1, 1939.]

[89 Pac. (2d) 1077.]

LAURA PEARSON SHEPLEY CLARK, *Alias* MRS. L. P. S. CLARK; *Alias* LEO CLARK, *Alias* LAURA P. SHEPLEY, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. Kenneth S. Scoville and Mr. V. Clare Dodd, for Appellant.

Mr. Joe Conway, Attorney General, Mr. W. E. Polley and Mr. Charles Bernstein, His Assistants, for Respondent.

McALISTER, J.—One Laura Pearson Shepley Clark was accused by the county attorney of Pima county by information filed April 14, 1938, of the crime of "Confidence Game, a felony," and from a judgment of conviction and the denial of her motion for a new trial, she has appealed.

The reporter's notes were not transcribed, so the record here does not include the evidence. The assignments challenge mainly the sufficiency of the information, hence it will be well to reproduce that pleading. It reads as follows:

"In the Name and by the Authority of the State of Arizona, Laura Pearson Shepley Clark, *alias* Mrs. L. P. S. Clark, *alias* Leo Clark, *alias* Laura P. Shepley, on this 14th day of April, 1938, is accused by the county attorney of and for the county of Pima, state of Arizona, by this information of the crime of Confidence Game, a felony, *committed as follows, to-wit*:

"The said Laura Pearson Shepley Clark (omitting *aliases* here and hereafter) on or about the 14th day of September, 1936, and before the filing of this information, at and in the county of Pima, state of Arizona, did then and there knowingly, willfully, unlaw-

fully and feloniously commit the crime of obtaining a valuable thing (to wit, one negotiable instrument of the value of Fifty Dollars ($50.00) lawful money of the United States of America) from one Harry H. Fleming, with intent to cheat and defraud, by means of false and fraudulent representations, statements and pretenses, a felony, committed as follows, to wit:

"That the said Laura Pearson Shepley Clark on or about the 14th day of September, 1936, at and in the county of Pima, state of Arizona, did then and there knowingly, willfully, unlawfully, and feloniously and with intent to cheat and defraud one Harry H. Fleming, falsely and fraudulently represent, state and pretend to the said Harry H. Fleming that there was then and there on specific deposit in the Valley National Bank in the city of Tucson, county of Pima, state of Arizona, the sum of several million dollars, lawful money of the United States of America, which said money was on deposit in the said Bank aforesaid as and for payment of and for certain gold bullion treasure which she, the said Laura Pearson Shepley Clark had found, and that the said sum of money then and there in said Bank as aforesaid was to be distributed forthwith by said Bank to the said Laura Pearson Shepley Clark, the said Harry H. Fleming and numerous other persons who had advanced money and other articles of value to the said Laura Pearson Shepley Clark and that some additional money was needed by the said Laura Pearson Shepley Clark then and there to defray expenses of stenographic and notary fees incident to the drawing up of documents providing for the distribution of the said money then and there on deposit in the said Bank as aforesaid to the said Laura Pearson Shepley Clark, the said Harry H. Fleming and said numerous other persons as aforesaid, and that the said documents were to be drawn up and prepared immediately, and that the said distribution of the said money would be made as aforesaid immediately, and that if he, the said Harry H. Fleming would thereupon advance to her, the said Laura Pearson Shepley Clark, the sum of Fifty Dollars ($50.00) lawful money of the United States of America, or give her his personal check for the same, for the purpose of defraying the

expenses of drawing up and preparing the documents aforesaid, that the said Harry H. Fleming would then and there be reimbursed the said advance of Fifty Dollars ($50.00) together with a substantial sum of money many times the amount of the said Fifty Dollars ($50.00) advanced, all out of the said money then and there on deposit in the said Bank as aforesaid; whereas in truth and in fact the said representations, statements and pretenses so made as aforesaid by the said Laura Pearson Shepley Clark to the said Harry H. Fleming were then and there in all respects utterly false, untrue, and fraudulent at the time of making thereof, and the said Laura Pearson Shepley Clark then and there well knew the said representations, statements, and pretenses so made as aforesaid by the said Laura Pearson Shepley Clark to the said Harry H. Fleming, were then and there in all respects utterly false, untrue, and fraudulent at the time of making thereof;

"And the said Harry H. Fleming then and there believing the said false and fraudulent representations, statements and pretenses so made as fraudulent by the said Laura Pearson Shepley Clark to be true, and the said Harry H. Fleming relying upon the said false and fraudulent representations, statements, and pretenses as aforesaid, and being deceived thereby, was induced by reason of the said false and fraudulent representations, statements, and pretenses, so made as aforesaid, to deliver and did then and there deliver to the said Laura Pearson Shepley Clark his personal check in the sum of Fifty Dollars ($50.00) lawful money of the United States of America, drawn on the Southern Arizona Bank & Trust Company payable to the order of Mrs. L. P. S. Clark, and the said Laura Pearson Shepley Clark did then and there obtain a valuable thing, to-wit: one personal check in the sum of Fifty Dollars ($50.00) aforesaid, from the said Harry H. Fleming, which said valuable thing, to-wit: one personal check in the sum of Fifty Dollars ($50.00) aforesaid, was the property of the said Harry H. Fleming, and the said Laura Pearson Shepley Clark then and there with intent to cheat and defraud the said Harry H. Fleming did then and there cheat and de-

fraud the said Harry H. Fleming and negotiated forthwith the aforesaid personal check for the sum of Fifty Dollars ($50.00) lawful money of the United States of America, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the state of Arizona.''

■■ It is claimed first that the court erred in denying appellant's motion to quash the information for the reason that it does not state facts sufficient to constitute a public offense in that it charges her with obtaining from her victim, Harry H. Fleming, a valuable thing, to wit, his personal check on the Southern Arizona Bank in the sum of $50, when the fact is that a check in the hands of its maker has no value whatever. That it bacame valuable the moment it went into her possession does not, it is argued, mean that it was worth anything to him before he parted with it and, this being true, it cannot be said that in securing it she obtained anything of value from him. In *Patterson* v. *State,* 25 Ariz. 276, 281, 215 Pac. 1096, 1097, 35 A. L. R. 366, it was pointed out that there is a

"line of false pretense cases which hold that an allegation in the indictment or information that the defendant obtained money is supported or sustained by proof that he obtained from the party defrauded his check. *State* v. *Germain,* 54 Or. 395, 103 Pac. 521; *State* v. *Foxton,* 166 Iowa 181, 147 N. W. 347, Ann. Cas. 1916E, 727, 52 L. R. A. (N. S.) 919; *State* v. *Jackson,* 87 S. C. 407, 69 S. E. 883. We think this is a just and fair rule and agree entirely with it.''

See, also, *State* v. *Gibson,* 132 Iowa 53, 106 N. W. 270; *People* v. *Hoffmann,* 142 Mich. 531, 105 N. W. 838; *Roll* v. *People,* 78 Colo. 589, 243 Pac. 641. There can be no serious question of the correctness of this view where the information alleges, as it does here, that the check was of the value of $50, lawful money

of the United States, and that appellant forthwith negotiated it for this sum. To hold otherwise would be entirely too technical, since the ultimate facts to be shown were that she obtained the check in the manner described and that it was of the value of $50. In *Hunt* v. *State*, 72 Ark. 241, 79 S. W. 769, 772, 105 Am. St. Rep. 34, 2 Ann. Cas. 33, 65 L. R. A. 71, the court well stated:

" . . . It would be carrying technicality to a most dangerous extreme to hold that the proof of the mere instrumentalities of obtaining the money constituted a variance with the charge of obtaining the money itself, where the same evidence also showed the fact of obtaining the money itself. A check is a mere order for so much money to the credit of the drawer in the bank or drawee, which it is bound to honor when made in form and properly presented. The proof also showed the money was paid to the defendant. . . . "

The next and principal assignment attacks the sufficiency of the information upon the ground that though it calls the offense appellant is accused of committing a ''Confidence Game, a felony,'' the facts set up therein describe, if any offense at all, that of obtaining goods by ordinary false representations in violation of section 4777, Revised Code of 1928, and not that defined in section 4790, commonly referred to as a ''confidence game.'' These two sections read as follows:

''§ 4777. *Frauds by false pretenses and reports.* Every person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money, labor or property, whether real or personal, or who causes or procures others to report falsely of his wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to

the same extent as for the larceny of the money or property so obtained.''

"§ 4790. *Confidence game; bogus check.* Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instruments, or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check, or by any other printed, written or engraved instrument, or spurious coin or metal, shall be guilty of a felony, and shall be punished by imprisonment in the state prison for a term of not less than one nor more than five years.''

▮▮▮ These sections define different offenses. This court has said twice, first in *Kimball* v. *Territory,* 13 Ariz. 310, 115 Pac. 70, and later in *Erickson* v. *State,* 14 Ariz. 253, 261, 127 Pac. 754, 758, that the confidence game statute provides for "a class of false representations not included in section 481 (now 4777), which deals with the subject of ordinary false representations." In neither of these decisions, however, does the court define false pretenses but in the first it states in the following language what is meant by a confidence game and this also is reaffirmed in the later case:

"This latter section (489, Penal Code of 1901, now 4790) . . . is intended to reach a class of offenders sometimes known as 'confidence men', who, with intent to cheat and defraud, obtain through some false representation, trick, or deception the money of their victim whose confidence has first been secured through some false representation or deception.'' [13 Ariz. 310, 115 Pac. 73.]

This language recognizes what the name itself implies, that the gist of the offense is gaining the confidence of a victim by some false representation, deception or device, and that no violation of the confidence

game statute can be established, whatever the swindling operation may have been, until this is shown. *People* v. *Gould,* 363 Ill. 348, 2 N. E. (2d) 324. It is not enough that the property has been obtained by false pretense. *People* v. *Peers,* 307 Ill. 539, 139 N. E. 13. In every confidence game a false pretense of some sort is involved but every false pretense does not involve a confidence game. *People* v. *Gould, supra.* In 25 C. J. 661 is found this language in describing what is meant by a confidence game:

"In several jurisdictions there are statutes directed against what is known as the 'confidence game,' which can hardly be defined in a manner which will cover all cases for the reason that schemes, the purposes of which is to swindle others, 'are as various as the mind of man is suggestive.' Generally speaking it is any swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. Any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking advantage of such confidence is a confidence game. A swindling operation does not, however, constitute a confidence game unless the element of confidence becomes a part of such swindling."

These sections have a common purpose, that is, to make criminal the act of defrauding another of property, but the distinction between the offenses denounced by them lies in the manner in which the defrauding is accomplished. Under 4777 this is done "by any false or fraudulent representation or pretense," and under 4790, "by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any means or instruments, or device, commonly called the 'confidence game.'" Because one of the alternatives by which the offense described in 4790 is committed, namely, "by means or by use of any . . . false or fraudulent representation, or statement or pretense," is practi-

cally the same as the method by which 4777 provides that section is violated, some prosecuting officers have felt that an information which charges that the property was taken by ''false or fraudulent representation, or statement or pretense,'' is good under either. If this were true, there would be no reason for the existence of 4777 and, besides, the fact that the offenses defined in the two sections are separate and distinct, that described in 4777 being a misdemeanor or a felony, depending upon the value of the property obtained, and that in 4790 being always a felony, regardless of the value of the property secured, each carrying a different penalty, would be immaterial, yet

''it will not be presumed that the Legislature intended to make one and the same transaction a misdemeanor under one section of the Criminal Code and a felony under another section.''

*People* v. *Peers,* 307 Ill. 539, 139 N. E. 13, 15. Hence, before the ''false or fraudulent representation or pretense'' that satisfies 4777 may be sufficient to show a violation of 4790 also, they must present a situation, which includes a trick or device of the character of those employed to gain the confidence of the victim, though it is not absolutely necessary that the trick or deception involve a token, symbol or device as distinguished from mere statements, provided the latter are made ''in connection with acts done, with the intent to cheat and defraud.'' *State* v. *Wilson,* 223 Mo. 156, 122 S. W. 701, 704.

The question, therefore, is whether the facts alleged in the information bring the charge against appellant within the class of offenses defined by 4790, and this must be determined not by the name the information itself gives the offense, but by the facts it pleads, the acts it says appellant committed. *Merrill* v. *State,* 42 Ariz. 341, 26 Pac. (2d) 110. These

are in substance that appellant falsely represented to Harry H. Fleming that there was then on deposit in the Valley National Bank in Tucson several million dollars, lawful money of the United States, that it was there for the purpose of paying for certain gold bullion she had found, and that it was to be distributed forthwith by the bank to appellant, Harry H. Fleming and numerous other persons who had advanced her money and other articles of value; that she needed some additional money to defray the expenses of stenographic and notary fees incident to the preparation of documents providing for the distribution of this money to the parties mentioned and that these documents were to be drawn up and the money distributed immediately; that if Harry H. Fleming would thereupon advance her $50, or give her his personal check for that sum, to defray the expenses of preparing said documents he would be reimbursed this sum, together with many times that amount out of said money on deposit.

These allegations, respondent contends, bring the information within the confidence game statute and in support of this contention it relies mainly upon *Kimball* v. *Territory* and *State* v. *Wilson,* both cited above. The indictment in the Kimball case does not appear in the opinion but respondent has examined the files of the case in this court and states that it charges that Elias S. Kimball and Richard A. Shipp falsely represented to one Richard Layton that they were the representatives and authorized agents of the Montezuma Orange and Banana Company, and as such had the right to sell the stock of that corporation and receive payment therefor; that they had been sent to the Gila Valley in Graham county, Arizona, by the corporation to sell its stock and that all moneys received by them in payment therefor would be remitted to the company

and by it used to improve certain lands owned by it in the Republic of Mexico; that the defendants, who were members of the Church of Jesus Christ of Latter Day Saints, commonly called the Mormon Church, procured and persuaded Andrew Kimball, a brother of Elias S. Kimball, and president of the St. Joseph's Stake of the Mormon Church, a man of great influence among the members of his church, to advise Richard Layton, also a member of that church, to purchase some of the stock of the Montezuma Orange and Banana Company. Following certain allegations as to statements made by Kimball and Shipp to Richard Layton relative to the number of acres owned by the company in Mexico, its condition, the crops being planted, and the returns to be realized therefrom, the indictment alleged that Richard Layton, believing the false representations, statements and pretenses made by the defendants to be true, purchased seven shares of stock and in part payment gave defendants two horses and certain shares of bank stock, but that the defendants had no right or authority from the Montezuma Orange and Banana Company to represent it or sell its stock and that the consideration received by them from Richard Layton for his stock was not in fact remitted to the company.

Respondent points out that in this indictment there is no mention of anything other than mere verbal representations and contends that nowhere in it is any trick, token, instrument or device as a means of securing the confidence of Richard Layton referred to, but that, notwithstanding this, the court held it good under the confidence game statute. It appears from the allegations that the defendants, who were themselves members of the Mormon Church, went to the Gila Valley in Graham county, Arizona, in which many members of that church resided and had as their presi-

dent and leader, Andrew Kimball, a brother of Elias S. Kimball, who was a very influential man in that community. Evidently the defendants went to that particular locality to carry out their plan because they believed that they could convince Andrew Kimball that the stock was valuable and that he would then recommend the defendants to the members of his church as honorable men and advise them to buy it. They succeeded completely in doing this and his help in the undertaking was a big factor in enabling them to win the confidence of the complaining witness and then sell him practically worthless stock. And even though they used only verbal representations in talking to their victim, it would be difficult to conceive of a scheme that would more appropriately come within the meaning of the words, "trick or device," as they are employed in the confidence game statute than their act in using Andrew Kimball to aid them in gaining the confidence of their victim to such an extent that they were able to sell him stock upon false representations relative to its value.

The other case relied on by respondent, *State* v. *Wilson*, was cited by the court as authority for upholding the Kimball indictment because the information in that case was drawn under section 2213, Revised Statutes of Missouri, 1899, now Missouri Statutes Annotated, (section 4304, page 2996), and the Arizona confidence game statute, now 4790, was taken practically *verbatim* therefrom. That information alleged in substance that the defendant, Wilson, called on John H. Bauch, a merchant at Cabool, Missouri, and represented that he was the authorized agent of the Pratt Food Company of Philadelphia, a Pennsylvania corporation; that he had the right to transact the business of the corporation, sell its goods and furnish advertising matter to dealers therein; that he had been sent by the

corporation to Bauch to sell him a bill of its goods and products; that he sold it, and then took an order from him for advertising matter; that following this the defendant told Bauch that he expected a draft or check from the corporation to defray expenses but that it had not been received; that he was in need of money; that thereupon he requested Bauch to cash a draft on the corporation for $25. It was alleged further that defendant was never employed by the Pratt Food Company and that the draft was returned unpaid. In holding that these allegations brought the information within the confidence game statute, the court said, among other things:

"Manifestly the provisions of section 2213 were directed against the obtaining of money or property from a person whose confidence has first been secured by and through means of false and fraudulent representations in connection with acts done, with the intent to cheat and defraud. . . . It was intended to reach a class of offenders known as 'confidence men,' who obtain the money of their victims by means of, or by the use of, some trick or representation designed to deceive. . . .

"The defendant in this case doubtless realized that, if he simply requested the cashing of the draft upon the Pratt Food Company, in all probability his request would not be granted. Hence he resorted to the deception and trick of impressing the prosecuting witness that he was the agent and representative of a business concern with which the prosecuting witness had had dealings, and thereby obtained his confidence, and manifestly it was through this deception and trick that he obtained the money from the prosecuting witness upon the worthless draft."

It is contended by the respondent that if the representations made by Wilson to Bauch, being verbal only, constituted a trick, deception or device within the meaning of these words as used in the confidence game statute, those employed by appellant, also merely

verbal, should be given this effect. If the situation confronting the victims in the two cases were the same this would be true but there is one important difference between them. Bauch was a customer of the Pratt Food Company and was then using its products and distributing its advertising, so when Wilson called on him and represented himself as the agent of that company, with the right to take orders for goods, he had no reason to question it, and especially was this true when he went further and took an order for a bill of goods and for advertising matter. He mixed the true with the false in such a way that the whole appeared real to Bauch. It was the relationship then existing between him and the Pratt Food Company that made Wilson's scheme possible. He could not have worked it with one to whom that company was a stranger.

In the representations made by appellant to Fleming, however, there was no important fact of any character that he knew was true that might have had a tendency to lead him to believe the false ones and thus help in winning his confidence. Every statement the information alleges she made to him was an absolute falsehood and in no sense based upon or connected with any fact known by him to be true, nor was any of them aided in any way by documents, letters or other device. Representations of this kind do not alone constitute a trick or device within the meaning of section 4790 but are merely false and fraudulent representations within the purview of section 4777. They fall within the class involved in *Erickson* v. *State, supra.* The defendant there was indicted and convicted under the confidence game statute for obtaining $30 from one George Goolsby by falsely representing to him that he, J. M. Erickson,

" 'had full right and authority to practice law, represent litigants, and obtain decrees of divorce in the courts of Arizona, and that he, the said J. M. Erickson, could get a decree of divorce for the said George Goolsby.' '' The court held that these allegations, even if true, did not "constitute the offense denounced by section 489 of the Penal Code," but that "Section 481, Penal Code (ordinary false pretense statute), was intended to cover cases in which the facts are as in this case."

▮▮▮ Appellant contends further that the information does not state an offense under 4777 because it does not allege that it was committed "designedly" since a false pretense must be designedly used to obtain the goods or money of another. It is true that it must appear that the false pretense was thus employed but it would be difficult to point out any serious difference in meaning between "designedly" defrauded, and, obtained "with intent to cheat and defraud," as these expressions are used in these two sections. The information is sufficient under the ordinary false pretense statute.

▮▮▮ This renders necessary a consideration of one other assignment and that is that since the amount appellant is alleged to have obtained is not over $50 a misdemeanor only is charged, inasmuch as 4777 provides that the offense it defines is punishable "in the same manner and to the same extent as for the larceny of the money or property so obtained." Under section 4757, Revised Code of 1928, it is grand larceny, a felony, when the property taken exceeds fifty dollars in value and petit larceny, a misdemeanor, when the amount is fifty dollars or less. The amount here is just $50 and, therefore, a misdemeanor only is charged. Under section 4926, Revised Code of 1928, "an indictment for any misdemeanor must be found, or an information filed within one year from its commission."

The information in this case was filed April 14, 1938, and it charges an offense committed more than eighteen months prior thereto, or on September 14, 1936. The evidence is not before us, hence we have no way of knowing whether facts tolling the statute were introduced. If there was nothing of this kind, the particular crime alleged, the obtaining of $50 from Harry H. Fleming, was filed too late and appellant's motion for a directed verdict should have been granted.

The judgment is reversed.

ROSS, C. J., and LOCKWOOD, J., concur.