533 P.2d 688

**The STATE of Arizona, Appellee,**

**v.**

**John E. GOVORKO, Appellant.**

**No. 2 CA–CR 411.**

Court of Appeals of Arizona,
Division 2.

April 3, 1975.

Rehearing Denied May 7, 1975.

Review Denied June 17, 1975.

Bruce E. Babbitt, Atty. Gen. by Teresa S. Thayer, Asst. Atty. Gen. Phoenix, for appellee.

Robert J. Hirsh, P. C. by Jeffrey W. Hanes, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant was indicted on ten counts of obtaining or attempting to obtain money or property by false pretenses in violation of A.R.S. § 13–312 (Cum.Supp.1973) and was convicted on four of the original ten counts (5, 7, 9 and 10). The facts of the case are as follows.

Under Count Five, appellant was charged with attempting to obtain property from Patio Brick by means of false or fraudulent misrepresentations. In the early summer of 1973, a man, who identified himself as John Shepard, contacted Gerald McCaslin, the manager of Patio Brick, by phone in regard to advertising in the Arizona Labor News and Tucson Building Code Digest. This man represented to McCaslin that the Arizona Labor News would be circulated to several thousand laborers in Arizona as well as being placed in the Labor Union halls. An agreement was reached whereby Patio Brick would receive two advertisements, one in each publication, for a purported value of $600, and the ads would be paid for with materials for the landscaping of a mansion that was allegedly being donated and remodeled. Mr. McCaslin made this agreement in reliance upon the representation concerning circulation of the publications.

In regard to Count Seven, appellant was convicted of attempting to obtain valuable consideration from H and H Trucking by means of false or fraudulent representations. In the early summer of 1973, a man, who identified himself as John Shepard, contacted Janet Hogan, the owner of H and H Trucking, by phone. In reliance on his representations that the Arizona Labor News was to be circulated widely throughout the State, and that his construction company was going to remodel a mansion recently purchased by the city for an historical site, Mrs. Hogan agreed to take out what was supposed to be $300 worth of advertisements in the Arizona Labor News in exchange for doing $200 worth of clean-up work at the mansion.

A short time later appellant called Mrs. Hogan in regard to a clean-up job in a residential area. It was determined that H and H Trucking's equipment was too large for the site so appellant asked Mrs. Hogan to find someone else to do the work. She arranged for another individual to do the work. Appellant did not pay the bill, so the individual contacted Mrs. Hogan. When she called appellant he told her that she was to pay the bill as he had a $300 credit with her. Mrs. Hogan informed appellant that his attempt to receive payment of the bill from her in this manner was contrary to their agreement.

In regard to Count Nine, appellant was charged with obtaining property for valuable consideration from Dura-Flex by means of false or fraudulent representations. A man identifying himself as John Shepard contacted Kenneth Snapp, an employee of Dura-Flex in regard to an estimate on re-roofing the Steinfeld mansion, which Shepard's company was allegedly purchasing from the American Legion. Subsequently, in reliance upon the representations made by agents of appellant as to the extent of the Arizona Labor News' circulation and through personal negotiations with appellant, Dura-Flex agreed to do certain re-roofing work in exchange for advertisements. The value of the completed re-roofing job was estimated at $11,025.00.

In regard to Count Ten, appellant allegedly made similar misrepresentations as to the extent of the Arizona Labor News' circulation to induce a Mr. Maness to enter into a trade-out agreement. However, it was not until after Mr. Maness painted appellant's house that he was informed he would be paid in part with advertisements in the Arizona Labor News.

Appellee asserts that misrepresentations were made and relied upon by the complaining witnesses. First, as to the extent of the distribution of the publications, that the circulation never exceeded 2,000 copies and they were never distributed throughout the State; and, secondly, the Steinfeld

mansion was never donated as an historical site nor was any effort made on appellant's part to purchase it from the American Legion as represented.

### ISSUES OF ERROR AS TO JURY INSTRUCTIONS

Did the trial court err by not including the existence of a confidence game as an essential element of A.R.S. § 13–312 (Cum.Supp.1973)? That statute reads:

"A person who, with intent to cheat and defraud, obtains or attempts to obtain from any other person, money, property, or valuable consideration, by means or by use of any trick or deception, false or fraudulent representation, statement or pretense, or by any other means, instruments or device commonly called a 'confidence game' shall be punished by imprisonment in the state prison for not less than one nor more than five years, or by imprisonment in a county jail for not to exceed one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

In explaining to the jury the elements of the crimes charged, the trial court gave the State's Requested Instruction No. 23:

"A person who with intent to cheat and defraud obtains or attempts to attain (sic) from any other person money, property or other valuable things by means or by use of any false or fraudulent representation or statement is guilty of a crime."

The trial court refused to give appellant's requested instruction specifying the existence of a confidence game as an element of the crime which must be proven and defining the term "confidence game." Basically, appellant asserts that A.R.S. § 13–312 (Cum.Supp.1973) is solely a confidence game statute while appellee asserts that the statute allows prosecution for obtaining money or property by either a confidence game, false pretenses or false promises. In order to resolve this dispute, it is important to note the statutory and case law genesis of A.R.S. § 13–312 (Cum.

Supp.1973). The 1928 forerunner of this statute reads:

"§ 4790. Confidence game; bogus check. Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instruments, or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check, or by any other printed, written or engraved instrument, or spurious coin or metal, shall be guilty of a felony, and shall be punished by imprisonment in the state prison for a term of not less than one nor more than five years. (§ 532, P.C. '13)".

In A.C.A.1939, the statute read:

"§ 43–2614. Confidence game—Bogus check.—Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instruments, or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check, or by any other printed, written or engraved instrument, or spurious coin or metal, shall be guilty of a felony, and shall be punished by imprisonment in the state prison for a term of not less than one [1] nor more than five [5] years. [P.C. 1901, § 489, 1913, § 532; R.C.1928, § 4790.]"

The statute was subsequently codified in A.R.S. § 13–311, pertaining to fraud by bogus check, and in A.R.S. § 13–312, which reads:

"A person who, with intent to cheat and defraud, obtains or attempts to obtain from any other person, money, property or valuable thing, by means or by use of any trick or deception, false or fraudulent representation, statement or

pretense, or by any other means, instruments or device commonly called a 'confidence game' is guilty of a felony punishable by imprisonment in the state prison for not less than one nor more than five years."

In the case of Clark v. State, 53 Ariz. 416, 89 P.2d 1077 (1939), the Arizona Supreme Court adopted the following definition of "confidence game" found in Corpus Juris, while applying § 4790:

"Generally speaking it is any swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. Any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking advantage of such confidence is a confidence game. A swindling operation does not, however, constitute a confidence game unless the element of confidence becomes a party of such swindling." 53 Ariz. at 424, 89 P.2d at 1081.

In *Clark,* supra, the court dealt with the distinction between a confidence game and false pretenses in the following manner:

"This court has said twice, first in Kimball v. Territory, 13 Ariz. 310, 115 P. 70, and later in Erickson v. State, 14 Ariz. 253, 261, 127, 754, 758, that the confidence game statute provides for 'a class of false representations not included in section 481 (now 4777), which deals with the subject of ordinary false representations.' In neither of these decisions, however, does the court define false pretenses but in the first it states in the following language what is meant by a confidence game and this also is reaffirmed in the later case: 'This latter section (489 Penal Code of 1901, now 4790) . . . is intended to reach a class of offenders sometimes known as "confidence men", who, with intent to cheat and defraud, obtain through some false representation, trick or deception the money of their victim whose confidence has first been secured through

some false representation or deception.' [13 Ariz. 310, 115 P. 73.]

This language recognizes what the name itself implies, that the gist of the offense is gaining the confidence of a victim by some false representation, deception or device, and that no violation of the confidence game statute can be established, whatever the swindling operation may have been, until this is shown. People v. Gould, 363 Ill. 348, 2 N.E.2d 324. It is not enough that the property has been obtained by false pretense. People v. Peers, 307 Ill. 539, 139 N.E. 13. In every confidence game a false pretense of some sort is involved but every false pretense does not involve a confidence game. People v. Gould, supra." 53 Ariz. at 423–24, 89 P.2d at 1080.

It is significant to note that in the above quotation the court indicates that "confidence men" are those who " . . . with intent to cheat and defraud, obtain through some false representation, trick, or deception the money of their victim . . .". A.R.S. § 13–312 (Cum.Supp.1973) uses virtually the same language to define the nature of the offense prohibited therein. This observation is significant because it clearly rebuts appellee's assertion that the statute is intended to encompass more than confidence games.

█ The legislature is presumed to have notice of judicial construction of its statutory terms and we therefore presume that it intended such terms in subsequent enactments to have the meaning previously given them by judicial construction. State v. Jones, 94 Ariz. 334, 336, 385 P.2d 213 (1963). Thus, it would seem inappropriate to follow appellee's reading of the statute to the effect that three crimes are prescribed therein for the obtaining of property with the intent to defraud: (1) by trick or deception, (2) by false or fraudulent representation, statement or pretense, i.e., false pretenses or false promises, or (3) by instruments or devices commonly called

a "confidence game". This approach contradicts the previous meaning given to the words "trick", "deception", and "false or fraudulent representations" by the court, i. e., to indicate merely the means by which a confidence game is implemented.

■ However, appellee seeks to bolster its contention by asserting that the legislature has manifested an intent to apply the statute more broadly by deleting a comma found in § 4790 before the phrase "commonly called a confidence game" and thereby restricting the application of the phrase to its immediate antecedent, viz., instrument or device. As a general rule, ". . . [a] change in language is presumed to be a change in form only unless it is clearly shown that the Legislature intended to change the meaning of the law." State ex rel. Bean v. Hardy, 110 Ariz. 351, 353, 519 P.2d 50, 52 (1974). The preceding rule would reasonably seem to be applicable to punctuation. Furthermore, a closer examination of § 4790 as compared with A.R.S. § 13–312 (Cum.Supp.1973) discloses that an additional comma was deleted and shifted within the phrase "by any other means or instruments". These changes would therefore seem to reflect little more than corrections of inaccurate and superfluous punctuation. Certainly if the legislature intended such a significant change in the breadth of the statute, one would expect a more substantial showing of such intent than the use of a grammatical sleight of hand with commas.

■■ Appellee also relies upon the title change of A.R.S. § 13–312 (Cum.Supp. 1973) to support its interpretation. A.R.S. § 1–212 indicates that the headings to sections are not part of the law itself. However, where there is ambiguity, case law suggests that the title as well as the law may be considered. City of Scottsdale v. Municipal Court of City of Tempe, 90 Ariz. 393, 368 P.2d 637 (1962). Given the statutory history and language of A.R.S. § 13–312 (Cum.Supp.1973), we fail to find any ambiguity in its language. Indeed, it seems illogical and redundant to hold that false promises or false pretenses fall within the ambit of the statute in view of the fact that false pretenses is clearly and specifically made a crime pursuant to A.R.S. § 13–661(A)(3) and arguably false promises may also be proscribed therein.[1] Therefore, the refusal of the trial court to give a confidence game instruction, as requested, constituted reversible error.

In view of our holding that A.R.S. § 13–312 (Cum.Supp.1973) applies solely to confidence games, it necessarily follows that the trial court improperly refused appellant's requested instruction concerning the necessity of showing a misrepresentation as to past event or existing fact. Maseeh v. State, 46 Ariz. 94, 47 P.2d 423 (1935); State v. Brown, 97 Ariz. 310, 400 P.2d 111 (1965).

■ Additionally, appellant asserts the trial court erred in refusing to give his requested instruction on the distinction between preparation and attempt. The requested instruction stated that "mere acts of preparation, not leading to the consummation of the intended crime, will not suffice to establish an attempt". The trial court instructed the jury on the general definition of attempt, but refused appellant's instruction over objection. Mere solicitation or preparation is not sufficient to constitute attempt. State v. Mandel, 78 Ariz. 226, 278 P.2d 413 (1954). Where a defense theory is reasonably supported by competent evidence, it is reversible error to refuse an instruction as to the theory. State v. Miller, 108 Ariz. 441, 501 P.2d 383 (1972). However, the flaw in appellant's contention is that the acts of the appellant established by the prosecution, upon which Counts 5 and 7 are based, do constitute more than mere preparation if the jury finds the requisite intent. Thus, the evidence does not support a defense instruction on mere preparation.

1. *See,* Annot., 32 Am.Jur.2d, False Pretenses, § 14 (1967); People v. Ashley, 42 Cal. 2d 246, 267 P.2d 271, cert. den., 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954).

## SUFFICIENCY OF THE EVIDENCE

Appellant's second major contention is a three-part attack on the sufficiency of the evidence to support a conviction. The three parts of this contention are (1) there was no evidence presented that appellant gained the confidence of any of the complaining witnesses, (2) there was insufficient corroborative evidence to establish that misrepresentations were made, and (3) there was insufficient evidence of appellant's intent to cheat and defraud.

In view of our holding that the jury was not properly instructed on the requisite elements upon which to find a violation of A.R.S. § 13–312 (Cum.Supp.), it is not necessary to consider this contention or others raised by appellant.

The judgment of conviction is reversed and the case remanded for further proceedings.

HOWARD, C. J., and HATHAWAY, J., concur.